POWELL *v.* CONSTRUCTION COMPANY.

(*Jackson.*   April 29, 1890.)

1. INDEPENDENT CONTRACTOR.   *Who is.*

"An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to control of his employer, except as to result of his work."

2. SAME.   *Employer of not responsible for his negligence, when.*

For damages inflicted by negligence of independent contractor, or his servants, while performing his employer's work, the latter is not responsible if the contractor was a fit and proper person for the particular employment, and the work agreed to be done was not unlawful, nor in itself a nuisance, nor necessarily attended with danger to others.

3. SAME.   *Liable for acts of his employer's servant loaned to him.*

Where the master employs an independent contractor to perform a specified piece of work, and furnishes his own general servant, being a competent person, to aid the contractor and be under his exclusive control and direction in the performance of that particular work, the contractor, and not the general master, is responsible for the acts and negligence of . the servant while thus engaged.

Cases cited and approved: 2 Law Rep. Common Pleas, 208; 38 Am. & Eng. R. R. Cases, 234; 51 Texas, 503 (S. C., 32 Am. Rep., 632); 46 Ga., 417; 42 Iowa, 246; 50 Mich., 516 (S. C., 45 Am. Rep., 54).

Cited and disapproved: 62 Miss., 565; 61 Texas, 526.

4. CASE IN JUDGMENT.

The Virginia Construction Company, having undertaken to build the Midland Railroad from Memphis to Jackson, sublet to Meredith & Horton the laying of the track from a point near Memphis "as far as the chief engineer" of the company "may determine and order," at the price of $475 per mile.   Meredith & Horton agreed to unload the rails, ties, and fastenings on their arrival, to reload and unload them in making their distribution, and to lay and surface the track. The construction company agreed to "furnish push-cars, locomotive,

flats, and engineer, fireman, and one brakeman," to be used and controlled by Meredith & Horton in doing this work. The whole work was to be done "in a thorough and workmanlike manner, to the satisfaction of the chief engineer" of the company. The servants furnished by the company in compliance with its contract were competent, but Meredith & Horton, having supplied the engineer with the fireman furnished, the plaintiff, while acting as brakeman, was injured by the negligence of this inexperienced acting engineer.

*Held:* 1. That Meredith & Horton are independent contractors, and not servants of the construction company.

2. That the crew furnished with the construction train were the servants of Meredith & Horton while engaged in this work.

3. That Meredith & Horton were liable to plaintiff for his injury, but that the construction company was not responsible therefor.

5. SAME. *Effect of requirement that work shall have approval of engineer.*

The requirement "that the work shall be done in a thorough and workmanlike manner, to the satisfaction of the engineer" of the construction company, does not imply or authorize such control over the details or methods of doing the work as would constitute the contractors or their servants the servants of the construction company.

Cases cited and approved: 8 N. Y., 222; 85 Pa. St., 247; 36 Mo., 202.

6. SAME. *Engineer's discretion as to quantity of work to be done.*

Nor does the provision that the contractors shall lay the track "as far as the chief engineer" of the company "may determine and order" make them or their employes servants of the company.

Cases cited and approved: 15 Am. & Eng. R. R. Cases, 100.

7. EVIDENCE. *Parol, admissible to show relation of parties different from that stated in written contract.*

Although upon the face of their written contract the relation between the company and Meredith & Horton appeared to be that of employer and independent contractor, yet it was competent to prove by parol evidence that their relation was in fact that of master and servant.

FROM SHELBY.

Appeal in error from Circuit Court of Shelby County. L. H. ESTES, J.

M. B. TREZEVANT and TURLEY & WRIGHT for Powell.

J. H. WATSON for Construction Company.

LURTON, J. The defendant is a corporation engaged in the business of doing railway construction under contract. It had a contract for the construction of the Tennessee Midland road from Memphis to Jackson. It sublet a portion of the track-laying to a firm of contractors known in the record as Meredith & Horton. The plaintiff, while the general servant of defendant, and while acting as a brakeman, was injured in making a coupling, and sustained the loss of an arm. The negligence alleged was that of Meredith, one of the subcontractors; and the case turns upon the question of the liability of defendant for his negligence. The contract between Meredith & Horton and defendant was in the following words and figures:

### VIRGINIA CONSTRUCTION COMPANY.

#### ARTICLES OF AGREEMENT.

(Signed in triplicate.)

Made and concluded this fifteenth day of November, 1887, by and between J. P. Meredith and J. R. Horton, under the firm name of Meredith & Horton, parties of the first part, and the Virginia Construction Company, party of the second part, witnesseth: That the party of the first part does hereby agree to lay the track of the Tennessee Midland Railway Company east from a connection with the Memphis and Charleston Railroad tracks at or near McGhee's Junction as far as the chief engineer of the party of the second part may determine and order, for the

sum of four hundred and seventy-five dollars ($475) per mile, including all handling and rehandling of materials, to wit:

| | |
|---|---|
| For unloading rails, ties, and fastenings on arrival, per mile . . | $ 15 00 |
| Reloading and unloading same during progress of work . . . . | 60 00 |
| Distribution of ties . . . . . . . . . . . . . . . . . . | 125 00 |
| Laying and surfacing track. ·. . . . . . . . . . . . . . . | 275 00 |

TOTAL—Laying and surfacing, per mile, complete, including all handling of materials of every kind. . . . . . $475 00

It is understood that the party of the second part will furnish push-cars, locomotive, flats, and engineer, fireman, and one brakeman; that there shall be two thousand eight hundred and sixteen (2,816) ties to the mile, full spiked; that the fish-plates shall have four (4) bolts to the joint, carefully adjusted; and that the track shall be surfaced with the best material found contiguous to the road-bed; but material for surfacing is not to be taken from the embankments, but procured outside of the slopes, and, where necessary, said material shall be hauled. In crossing the river bottoms, or at other places where surfacing material is difficult to get, such extra allowances may be made as the chief engineer deems equitable.

The parties of the first part hereby agree to put in the cattle-guards upon that part of the road where the track is laid by them, as per plan furnished, including excavation of pit and all materials for guard and fencing, for $45 each. The lumber used in cattle-guards to be of heart white oak, heart post oak, or heart yellow pine, free from all defects calculated to impair strength; the whole to be done in a thorough and workmanlike manner, to the satisfaction of the chief engineer of the party of the second part.

Approved as being in accordance with proposal of parties of the first part. R. H. TEMPLE, *Chief Engineer.*

Witness the following signatures:

MEREDITH & HORTON,

WITNESS—T. T. TALLEY,

    C. L. POWERS, JR.

VIRGINIA CONSTRUCTION COMPANY,

    By . . . . . . . . . . . . . . . . .

*V. P. and G. M.*

No question is made as to the competency of the several members of the crew of the train for the posts to which they were assigned by defendants, in whose general service they were. The

negligence alleged is that Mr. Meredith temporarily displaced the engineer on one of the construction engines, and ordered his fireman to act as engineer, while plaintiff, a brakeman on same train, did some necessary coupling. By the negligent and unskillful conduct of this acting engineer in the management of the engine while making this coupling, plaintiff's arm was crushed. It is charged that the unfitness of this fireman to manage an engine was known to Meredith and unknown to plaintiff. Plaintiff's suit was originally against both the Tennessee Midland Road and the Virginia Construction Company. There has been two trials of the cause. The first resulted in a verdict and judgment in favor of plaintiff, but against the construction company alone. This verdict, as against defendant, was set aside and a new trial granted. Upon the second trial there was a verdict and judgment for defendant. Both records are before us, but no error is assigned upon the failure of the Circuit Judge to set aside the verdict in the first trial in favor of the railway company.

Was Meredith the agent .or servant of the Virginia Construction Company in the management of this construction train? If he was, defendant is responsible for his negligence. If, however, he was not the agent or servant of defendant, but an independent contractor with reference to the work he had contracted to do, and in the management and control of this train, and the defendant had

no right to control his conduct in the particular matter complained of, then plaintiff's remedy would be against Meredith & Horton, the subcontractors, and not against defendant.

An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to control of his employer, except as to the result of his work. The employer of such a contractor, if he be a fit and proper person, and the work be not in itself unlawful, or a nuisance in itself, or necessarily attended with danger to others, will not be responsible for his negligence or that of his subcontractors or his servants. Mr. Thompson, in his work upon Negligence, says that "in every case the decisive question is, Had the defendant the right to control in the given particular the conduct of the person doing the wrong?" Thompson on Negligence, 909.

The fact that the general contractor sublets a part of the work embraced in his own contract, and stipulates, as in the contract under consideration, "that the work is to be done in a thorough and workmanlike manner, to the satisfaction of its chief engineer," will not be such an assumption of a right to control as to the details or methods of doing the work, as will make him responsible for wrong of such subcontractor or his servants. Such a provision is nothing more than is usual and necessary in order to enable the employer to see

that the work contracted for is carried out, and neither implies or authorizes any such control of the details as would make the contractor his servant. Thompson on Negligence, 913; *Pack* v. *New York*, 8 N. Y., 222; *Erie* v. *Caulkins*, 85 Pa. St., 247; *Clark* v. *Hannibal R. Co.*, 36 Mo., 202.

The fact that this contract provided that the track was to be laid as far as it should be ordered by the chief engineer of defendant, does not take it out of the rules applicable to independent contractors. *Hughes* v. *Railroad*, 15 Am. & Eng. R. R. Cases, 100.

There can be no serious doubt that, upon the face of this contract, Meredith & Horton were independent contractors within the rule we have stated, in so far as their engagement applies to the surfacing and laying of track. The difficulty presented arises upon that provision by which the defendant contracted to furnish them with " push-cars, locomotive, flats, and engineer, fireman, and one brakeman."

Now, if this be construed as an engagement whereby the defendant agreed to do part of the work—such part as required the use and services of a train—and that it was to do this part with its own cars, engine, and train servants, so that this part of the work was to be done by it independently of Meredith & Horton, or in conjunction and co-operation with them, then the defendant would be in the control of this train, and its

crew would be not only their general servants, but their special servants, engaged in the special work of defendants. In such case, if Meredith & Horton were permitted by defendants to manage and control this train, exclusively or in co-operation with it, they would be their agents and servants with respect to such control and management, although as to the other work to be done by them they would be independent contractors.

But upon looking to this contract in all its parts, we do not think that it was contemplated that any part of the work involved in it should be done or carried on by defendant, either independently or in co-operation with the subcontractors. The contract requires Meredith & Horton to unload the rails, ties, and fastenings. Now, this clearly contemplated the delivery of these materials to them, and presumably at the point where the track to be laid made connection with some completed railway over which this material had been shipped. Having unloaded the material at the place of arrival from the cars of the carrier, the contract then plainly requires:

*First.*—The reloading upon their own train for distribution along the line of the progressing work.

*Second.*—The unloading at points convenient for use or redistribution.

*Third.*—The distribution of ties in advance of track-laying.

*Fourth.*—The laying of the track and its surfacing.

It is manifest that this work would require one or more construction trains, with crews necessary for operation.

Now, in view of the situation and the work to be done, the meaning of the contract seems to be this: That, inasmuch as in the transportation of materials from point of beginning to points along the advancing way, and in the distribution thereof, it would be necessary, in order to do their work, that the contractors for track-laying should have the use of push and flat cars, and an engine and the services of an engineer, fireman, and brakeman familiar with management of trains; and, inasmuch as the defendant owned and had upon the ground such engine and cars, and had in its service competent men to operate such a construction train, it was therefore agreed that defendant should furnish such construction train and crew to Meredith & Horton, to be under their control, to aid them in doing their work, and that defendant should, on this account, pay them as much less for the work they were to do as such appliances and servants would cost them if they had to find the engine and cars and pay the men themselves. Obvious economic reasons would require that the train distributing materials should be under the control of the men who had contracted to lay the track.

But it is urged very earnestly that, inasmuch as this contract implies that the servants operating this train were to be selected and paid by the

defendant, therefore they continued to be the servants of the defendant, and that no power to control them or this train could be vested by contract in another, save by way of delegation, and that, as matter of law, the person exercising control would be the agent of the general master.

This argument seems very plausible, and furnishes the real point of difficulty in the case. The question which is thereby raised is, for the most part, a new one, and the decisions, few in number, show a diversity of judicial opinion. After careful consideration, we think the weight of opinion, as well as of reason, is that the fact that one is the general servant of one employer will not, as matter of law, prevent him from becoming the particular servant of another. The question as to who originally employed the servant, or who pays him, is not always a conclusive test as to who was his master in and about a particular work upon which he was engaged.

The better test would seem to be, Was he, in regard to the particular matter in which he was employed, doing the work of a general master, or was he engaged in doing the work of another, over whom the general master had no control? If he was performing a special service for another, who, with reference to the details of such work, was an independent contractor, then the servant will, as to that particular service, be the servant of the one for whom such service was performed, although he may be the general servant of another.

The cases of *Railroad* v. *Norwood*, 62 Miss., 565, and of *Burton* v. *Railroad*, 61 Texas, 526, have been pressed upon us by counsel. They are not in harmony with the view we have reached, in so far as they seem to rest the question upon the power of employment and discharge and the duty of paying. These tests would prevent the general servant of one from becoming the particular servant of another under any circumstances. The general master would always stand responsible for his negligence, although engaged in doing the work and under the control of another. We think the better rule, and the better supported rule, to be that announced by Chief Justice Cockburn in *Rourke* v. *Whitemap Colliery Company*, Law Rep., Common Pleas Div., Vol. II., 208.

In that case the learned Judge said: "When one person lends his servant to another for a particular employment, the servant, for any thing done in that particular employment, must be dealt with as the servant of the man to whom he was lent, although he remains the general servant of the person who lent him." The case in which this principle was applied was this: The colliery company contracted with one Whittle to sink a shaft and remove the soil. The services of an engine and engineer were necessary to the accomplishment of this work. The colliery company having such an engine and an engineman in its service, contracted to let Whittle have this engine and engineman to aid him in doing his work, and

to be under his control; and that it should pay Whittle as much less for his job as he would have had to pay if he had had to find the engine and pay the engineer himself. By the negligence of this engineman, the general servant of the colliery company, the plaintiff, Rourke, sustained an injury, for which he sued the colliery company. It was held that the engineman, being under the control of Whittle, an independent contractor, and being engaged in doing his work, was, while thus engaged, the particular servant of Whittle; though he had been selected and paid by the colliery company, and was its general servant, yet the latter were not liable for his negligence while thus engaged.

The same principle was applied in the following cases, the facts of which brought them within the same general principles as are decisive of the case now under consideration: *Miller* v. *Railroad,* 38 Am. & Eng. R. R. Cases, 234; *Cunningham* v. *Railroad,* 51 Texas, 503 (S. C., 32 Am. Rep., 632); *Central Railroad* v. *Grant,* 46 Geo., 417; *Vesy* v. *Railroad,* 42 Iowa, 246; *Joslin* v. *Grand Rapids Ice Co.,* 50 Mich., 516 (S. C., though with erroneous head-note, 45 Am. Rep., 54).

The construction of this contract by the learned Circuit Judge was in accord with the view we have taken of it. It was, of course, competent for the plaintiff to show that, as matter of fact, the parties had put a different construction upon it by their conduct, and that defendant had, in

fact, exercised a supervision and control over the work in its details inconsistent with the presumed character of Meredith & Horton as independent contractors, thus making a liability outside of the contract. It was also competent to show that, with reference to the control of the construction train, Mr. Meredith was, in fact, the agent and servant of defendant, either by express authority or by implication arising from the conduct of the parties and the. uses to which the train was put. All proof which tended to show any of these things was admitted, and the jury properly and clearly instructed as to its legal effect. There is an abundance of evidence to support, under our rule, the finding of the jury for defendant, and there was no error in the charge. There was no error in setting aside the first verdict in this case, and none in refusing to set aside the last.

Judgment affirmed.