# OCTOBER TERM, 1895.

## PRATT v. BROWN.

1. NAVIGABLE STREAMS—MAINTENANCE OF DAM—PRESUMPTION.
   In the absence of evidence to the contrary, a dam across a navigable stream will be presumed to have been constructed under proper authority from the board of supervisors.

2. SAME—BREAK IN DAM—RIGHTS OF OWNER—DETENTION OF LOGS.
   The owner of a dam lawfully maintained across a navigable stream is entitled to a reasonable time within which to repair an accidental break therein, and for that purpose, if necessary to the protection of the dam from further serious injury, may temporarily detain the logs of a navigator.

Error to Saginaw; McKnight, J. Submitted April 18, 1895. Decided October 8, 1895.

Case by Edward L. Pratt against Addison T. Brown and William Ryan for an alleged unlawful interference with the driving of plaintiff's logs. From a judgment for plaintiff, defendants bring error. Reversed.

*William H. Sweet* and *W. A. Burritt (Chauncey H. Gage,* of counsel), for appellants.

*C. W. Perry,* for appellee.

McGRATH, C. J. This action is brought to recover damages by reason of what is claimed to be an unreasonable interference by defendants, who are the owners of a milldam known as the "Beaverton Dam," with the plaintiff, in the use of the Tobacco river for the purpose of driving logs. The following is a crude sketch of the river and its tributaries:

SB — SAND BAR.
CD — CLARE DAM.
B — BEAVERTON DAM.
D — DAM FOR FLOODING PURPOSES.
AC — BOOM CO. LIMITS.

The river, in its natural state of water, is from 80 to 100 feet in width. The dam is between 500 and 600 feet long, extending across the stream proper, and over a broad river bottom lying inside of an oxbow, formed by a bend in the river. A sketch will assist in understanding the situation:

A— BREAK IN DAM.
B— BOOM STICK.
C— CHUTES.
D— DITCH.

The south branch is the principal stream, and is really the river proper. The milldam is located four miles above the boom company limits, and about a mile below the junction of the middle branch and north branch with the main river. The "sand bar" is about eight miles from the mouth of the middle branch. Plaintiff's rollways were located on the middle branch, at points between the sand bar and a point four miles above the mouth of the middle branch.

One Schunk commenced floating and driving logs on the south branch on March 28, 1893. Plaintiff commenced on the middle branch April 1st. When Schunk's logs reached the junction of the middle branch with the main river, but a few of plaintiff's logs had passed that point. Defendants had placed a boom stick across the main channel of the river at a point about 500 feet above the dam, and, when these drives reached the boom stick, a break had occurred in the dam just south of the log chute, reducing the water on the flats below the floor of the chute, and so low that the logs would not pass

over the flats. Schunk's logs filled the river for one and a half miles above the dam, and plaintiff's logs extended back several miles above the mouth of the middle branch, and were held for some time. Finally, a ditch was made across the flats and through the dam, and the logs were released.

Defendants contend (a) that the river was not navigable for this purpose without the aid of floods, (b) that the break in the dam was caused by the flooding, and (c) that defendants' right to maintain the dam, to the concurrent use of the stream, and to a detention of the logs until a reasonable time within which to repair the dam had elapsed, was not sufficiently guarded in the instruction given to the jury.

1. The dam was constructed in 1892, with reference to the use of the stream for this very purpose. The detention occurred in April, 1893, and the testimony clearly tended to show that the river had been actually used for this purpose for upwards of 25 years. There was testimony tending to show that, east of the mouth of the middle and north branches, the river was navigable at this season of the year in ordinary stages of water, and without flooding. There were no log dams on the main river west of the Beaverton dam and east of the Clare dam, in Clare county, some 15 miles above. The log dams were in the tributaries, and were used principally to float the logs into the main river. The court was fully warranted in submitting this question to the jury. The instructions given upon the point were full, and correctly stated the rules of law applicable. The following questions were submitted to the jury, and both were answered in the affirmative: "Is the Tobacco river navigable for driving logs?" "Can it be navigated without the use of dams?"

2. The testimony did not warrant the submission to the jury of the question as to plaintiff's responsibility for the break in the dam.

3. The court was requested by defendants to instruct the jury as follows:

"As to the question whether the defendants had a right to prohibit the opening of the dam as claimed by the plaintiff, I charge you that, if the stream is periodically navigable, the parties would have equal rights in its use, —the plaintiff to float his logs, and the defendants to maintain and use the dam,—and it would be the duty of each to so use the stream as not to unreasonably interfere with the other in his enjoyment of it. The plaintiff would have no right to flood the river, by the use of dams on the same or tributary streams, so as to interfere with defendants' dam, and the defendants would have no right to close up the chute, and prohibit the plaintiff for an unreasonable time from passing with his logs. Should the jury find that the dam had been injured and driven out by high water, and was in such condition, at the time the plaintiff desired to pass through it with his logs, as to render it impossible for the defendants to accede to the request of the plaintiff, and had the plaintiff been allowed to take down a portion of the dam it would have caused its destruction, or damaged it to a considerable amount, in such case the defendants had a right to refuse to allow the plaintiff to tear out the dam, and also had a right to prohibit the plaintiff from passing through the dam, for a reasonable length of time, for the purpose of protecting the dam, and what would be a reasonable length of time is a question for you to determine from all the facts and circumstances in the case."

The court refused these instructions, but, after a general instruction that the rights of the parties were concurrent, and that each had a right to exercise his use of it in such a way as not to interfere unreasonably with the rights of the other (which instruction was proper), the court proceeded to give, without further qualification, several of plaintiff's requests, as follows:

"His right to recover is based upon the supposition that the river was a navigable stream, and that, as such, it could not be obstructed by any one except in a lawful way. * * * Assuming that the stream in question was, at the time stated, a navigable stream, the defendants could not be held, unless you could determine that

they unlawfully obstructed the stream.    *   *   *   Was this stream wrongfully obstructed, as complained of by the plaintiff, and was that act, if a wrongful one, caused by these defendants?    *   *   *   The testimony shows, as given by both parties, that the bed of the stream was entirely closed by the dam, that there was no provision, within several rods of such bed of the stream, to pass down the stream with the logs or other floatables.    *   *   * If you find such river to be a navigable stream, under this definition, then the defendants have no right to abridge the right of plaintiff to freely navigate the same. If you find that plaintiff was prevented from running his logs down such stream because of the dam across the bed of the stream, and that the defendants were the cause of such dam being there, your verdict must be for the plaintiff.    *   *   * If you further find that the defendants, by their acts, prevented plaintiff from running his logs down the stream after there was a break in such dam, your verdict must be for the plaintiff.    *   *   * If you find that defendants forbade the plaintiff from either opening a way through such dam or running his logs through the opening of such dam caused by the water, that would constitute a prevention by the defendants, and plaintiff would not have to assert his rights to the extent of committing a breach of the peace."

The record is silent upon the subject; hence it will be presumed that the proper proceedings were taken to entitle defendants to construct the dam.    *Nelson* v. *Navigation Co.*, 44 Mich. 7.

Though the stream be navigable, defendants have the right to maintain the dam, and plaintiff's right to floatage is subject to the proper use and protection of the dam. The maintenance and protection of the dam cannot be said to be an interference with plaintiff's rights, or an obstruction to the navigation of the stream. The naked question here is, what are the relative rights of the owner of the dam and the navigator, in a case like the present, where, without fault of either, there is a recent breach in the dam? The rights of both continue to be relative. The dam owner has an undoubted right to a reasonable time to repair the dam, and to its rea-

sonable protection, and, where the detention of the logs is necessary to such repair and protection, he has the clear right to a reasonable temporary detention for that purpose. Both parties must be reasonable in their demands. The navigator acquires no exclusive right by reason of the accident to the dam, and the dam owner must be reasonably prompt in repairing the dam, or, if there be an opportunity to admit of the passage of the logs before the repairs can be made, without serious further injury to the dam, he should afford every reasonable facility for such passage. Defendants were entitled to the instructions requested, and plaintiff's requests, as given, were calculated to impress the jury with the idea that they might find that the dam, because of the method of its construction, was in itself an obstruction, and an interference with plaintiff's right of navigation, and that he had an absolute right to proceed on his way, irrespective of defendants' right to the protection of their property. The error is more apparent from the fact that plaintiff testified that—

"The people I talked with were trying to manage so as to save further injury or destruction of the dam, I think. There did not seem to be any willful intention on their part to prohibit me from getting my logs through. They did not request me to stop. I could not have stopped, however, without laying myself liable. The floods given to me from the tributary streams kept the water at the dam raised, and, in my judgment, hindered the men who were engaged in repairing the dam, and I kept flooding continuously to avoid violating contracts I had made to run logs."

The judgment is therefore reversed, and a new trial granted.

The other Justices concurred.