SALLIOTTE v. KING BRIDGE CO.

(Circuit Court of Appeals, Sixth Circuit. April 20, 1903.)

No. 1,130.

1. NEGLIGENCE—INDEPENDENT SUBCONTRACTOR—LIABILITY OF GENERAL CONTRACTOR.

A general contractor is not liable to third persons for the negligent acts of an independent subcontractor, nor unless the thing contracted to be done is necessarily a. public nuisance, or the injury is a direct result of the act or thing which the independent contractor is required to do.

2. SAME.

Adjoining townships in Michigan contracted for the construction of a bridge across a navigable river in accordance with plans and specifications approved by the War Department, and presumptively in the exercise of lawful authority. The contract, as a whole, was let to defendant, which contracted with a third person to construct the abutments and piers; the work being done under the direct supervision of an engineer representing the owners. *Held*, that defendant was not liable to an adjoining landowner for the alleged negligent acts of the subcontractor in dredging away a portion of the bank of the stream in the performance of his contract.

3. SAME—DEFECTIVE CONSTRUCTION OF BRIDGE—LIABILITY OF CONTRACTOR TO THIRD PERSONS.

A contractor cannot be held liable to a stranger for an injury resulting from the defective construction of a bridge, when the injury did not occur until after the bridge had been completed and accepted by the owners, and the contractor had parted with the possession and title.

4. NAVIGABLE WATERS—RIPARIAN OWNERS — INJURIES INCIDENT TO PUBLIC IMPROVEMENTS.

A riparian owner holds subject to all the injury, not amounting to a taking of his land, which results from the lawful improvement of the navigation of the stream, or the construction of piers, abutments, or bridges above his land, in the exercise of public rights in and over the stream in respect to such matters.

5. SAME—TAKING OF LAND FOR PUBLIC USE.

The fact that the volume and force of the current of a navigable stream flowing against the bank on the land of a riparian owner have been increased by the construction of a bridge and the deepening of the channel on the side next his land, rendered necessary because of the construction of a pier in the middle of the stream, resulting in the washing of the bank, does not amount to a taking of his land.

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

This is an action of trespass on the case. The plaintiff in error, who was the plaintiff below, is the owner of a tract of land bounded on its northern side by the river Rouge, and on its westerly side by a great public highway, called the "Detroit and Monroe Road," which road crosses the river upon a public bridge at the northwestern corner of the plaintiff's land. The river Rouge is a navigable stream emptying into the Detroit river, and wholly within the state of Michigan. The declaration avers that in 1896 the defendant, the King Bridge Company, contracted to construct a new iron bridge, with stone abutments and piers, to take the place of an old bridge; the contract being with the townships of Springwells and Ecorse, and with an electric railway company which was operating an electric road along and upon the said Detroit and Monroe Road. It is then averred that it was the

---

¶ 1. See Master and Servant, vol. 34, Cent. Dig. § 1245.

duty of the said contractor "so to conduct himself and so to execute the said work as not to injure in any manner the premises aforesaid of the said plaintiff, yet the said defendant, in utter disregard of its duty in the premises, and to save the expense of hauling dirt from a distance, did, by a dredge, dig up a large amount of dirt next to the Ecorse abutment of said bridge, thereby turning away the natural channel bank of the said river Rouge, and widening the same at that place to a great width, to wit, thirty feet, and by reason of the large amount of dirt taken from the said river at the said place, the cutting away of the channel bank as aforesaid, and of the placing of a turntable in the center of the said river, the said defendant, in utter disregard of the property rights of the said plaintiff, changed the course of current of the said river Rouge, and caused the same to run directly against the aforesaid property of the said plaintiff, thereby tearing and carrying away a large part of the frontage of the said plaintiff's land upon the said river Rouge, and doing great damage to his property, etc., all to the damage of the said plaintiff five thousand dollars." The defendant pleaded the general issue and gave notice of certain defenses which it would make under that issue— among others, that it would show that it had only been a contractor with the townships named above and the electric railway to construct a bridge according to plans furnished by said townships, and which said plans and specifications had been approved by the proper federal authority—the river Rouge being a navigable stream—and that any dredging done had been by the requirement of said federal authority for the purpose of maintaining the navigability of said river. At the close of all of the evidence, the court instructed the jury to find for the defendant.

Chas. Stewart (Moore & Moore, of counsel), for plaintiff in error.

Brennan, Donnelly & Van De Mark and Henry L. Lyster, for defendant in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

LURTON, Circuit Judge, having stated the case as above, delivered the opinion of the court.

1. The present structure took the place of an old bridge. It is not averred that the bridge was constructed without authority or unlawfully, and there was no evidence offered tending to show that the two townships were without authority in replacing the old by the new bridge, or exceeded their authority in contracting for the construction of the particular bridge here in question. Under the law of Michigan, the county board of supervisors had the power to determine when and where navigable streams may be crossed by bridges; and, in the absence of any averment or evidence to the contrary, we must assume that this bridge was lawfully constructed, the townships having obtained the consent of the proper authority. Nelson v. Navigation Company, 44 Mich. 7, 5 N. W. 998, 38 Am. Rep. 222; Pratt v. Brown, 106 Mich. 628, 633, 64 N. W. 583. So far as the consent and approval of the United States was essential, that was obtained; the plans and specifications of the bridge having been submitted to, and approved by, the Secretary of War, 26 Stat. 454 (section 7, Act Sept. 19, 1890).

2. So far as the plaintiff's declaration proceeded upon the ground of either unskillfulness or negligence in the construction of the bridge, or its abutments and pier, there was no substantial evidence upon which a verdict might have been returned against the King Bridge Company. The plans for the bridge, including its abut-

ments and piers, were prepared under the direction and supervision of the authorities contracting for the erection of the bridge, and approved by the Secretary of War; and when so adopted the work of construction was let out, as a whole, to the King Bridge Company. That company contracted with a third person to construct the bridge abutments and piers, and this substructure was located and constructed under the constant supervision of the civil engineer representing the owners of the bridge. The only charge of negligence is "that, to save the expense of hauling dirt from a distance, [the defendant] did, by a dredge, dig up a large amount of dirt next to the Ecorse abutment of said bridge; thereby tearing away the natural channel bank of the said River Rouge, and widening the same at that place," etc. Now, if it was either unskillful or negligent to so dredge the river next the abutment on plaintiff's side of the river, it was the negligence of an independent contractor, and not that of the defendant. The firm which built the abutments, and did the excavation for their foundation and the dredging in front when built, contracted to do that particular work in accordance with the plans and specifications already prepared. They did not become the general servants of the King Bridge Company, but only contracted to do for that company a specific work. That the bridge company, through its engineer or other agent, exercised some kind of general supervision, does not affect the question, where that is only for the purpose of seeing that the specific work is done in accordance with the contract. In such circumstances, those who contract to produce a finished structure according to plans furnished are independent contractors, responsible for their own acts of negligence. Powell v. Virginia Construction Co., 88 Tenn. 697, 13 S. W. 691, 17 Am. St. Rep. 925; Casement v. Brown, 148 U. S. 615, 13 Sup. Ct. 672, 37 L. Ed. 582; Railway Co. v. Martin, 100 Ala. 511, 14 South. 401. A general contractor is not liable to third persons for the negligent acts of an independent subcontractor unless the thing contracted to be done is necessarily a public nuisance, or the injury is a direct result from the act or thing which the independent contractor is required to do. 16 A. & Eng. Ency. Law, 192, 196; Quarman v. Burnett, 6 M. & W. 499; Laugher v. Pointer, 5 B. & C. 560; Blake v. Ferris, 5 N. Y. 48, 55 Am. Dec. 304; Robbins v. Chicago, 4 Wall. 657, 18 L. Ed. 427; Casement v. Brown, 148 U. S. 615, 13 Sup. Ct. 672, 37 L. Ed. 582. This principle of nonliability for the negligence of an independent contractor applies to and exempts the general contractor. Powell v. Virginia Const. Co., 88 Tenn. 692, 13 S. W. 691, 17 Am. St. Rep. 925; Rapson v. Cubitt, 9 M. & W. 710; Slater v. Mersereau, 64 N. Y. 138.

3. But aside from this, the evidence clearly established that the dirt excavated at the edge of the river bank, where the road touches the river for the purpose of making a pit for the foundation of the abutment, was thrown on the river side and into the river to make an embankment to keep the water out. When the abutment was finished, the dirt thus thrown into the edge of the river was dredged out and used to fill in behind the abutment. There was no substantial evidence that the dirt dredged and used to form the bridge

approach exceeded that thrown into the river, or that the river bank was cut away either to save hauling, or for any other unlawful purpose, or in a negligent or unskillful manner.

4. So far as the plaintiff's case is rested upon damages due to any defective construction for which the defendant might be liable upon its contract to the owners of the bridge, it is not maintainable, because there is not the slightest evidence that any damage occurred until after the completion of the bridge and its acceptance by the townships. There is, no rule under which a third person may recover damages against a builder or contractor for an injury sustained by reason of defective construction, if the thing constructed is not inherently and necessarily dangerous, when the injury did not occur until after the builder or contractor had parted with the possession and title. The liability of the builder or contractor for defective construction is to the person with whom he was under contractual relations, and a stranger can hold him liable after he has parted with the possession only under exceptional circumstances. Marquardt v. Ball Engine Co., 122 Fed. 374. This rule has been applied to suits by strangers for injury arising from defective construction of bridges and houses, when it was sought to hold the contractor liable after completion of his work (The Mayor of Albany v. Cunliff, 2 N. Y. 165; Curtin v. Somerset, 140 Pa. 70, 21 Atl. 244, 12 L. R. A. 322, 23 Am. St. Rep. 220), and to an action against a contractor for an injury from a bursting sewer. First Presbyterian Cong. v. Smith, 163 Pa. 561, 30 Atl. 279, 26 L. R. A. 504, 43 Am. St. Rep. 808. In Blunt v. Aikin, 15 Wend. 522, 30 Am. Dec. 72, it was held that an action on the case for flowing lands will not lie against a former owner of the dam, who erected the dam and built the wall by means of which the injury was done, when it appears that other persons are in possession of the premises, occupying them as their own, not being tenants of such former owner.

5. The river Rouge between the stone abutments of the bridge is 198 feet wide. The pier upon which the bridge swings is in the center of the river, and is 32 feet wide. This pier obstructs what had been the deep, navigable channel of the river, and rendered necessary the deepening of the river on one or the other side of the pier so as to continue the navigability of the river. The act of 1890 (Act Sept. 19; 26 Stat. 426, 453) provides that no bridge shall be built across a navigable stream, except upon plans approved by the Secretary of War, and also provides that, if any bridge shall prove an obstruction to any waterway, it shall be the duty of the Secretary of War to cause the parties constructing or controlling such bridge to make such changes as to obviate the difficulty. Lake Shore & M. S. Ry. Co. v. Ohio, 165 U. S. 365, 17 Sup. Ct. 357, 41 L. Ed. 747. Now, it is shown that, this pier proving an obstruction to the deep channel, the township authorities were required to deepen by dredging a channel of sufficient depth between the pier and plaintiff's side of the river. The King Bridge Company neither did this dredging, nor procured it to be done. It was done by the township authorities, the Electric Railway Company probably joining in the matter. Now, plaintiff must at last stake his case upon the contention that the evidence showed

that the injury to his property is due to the obstruction of the current caused by this pier, and its diversion against his land by thus deepening the channel on his side of the river. We do not understand that the plaintiff claims that this bridge was constructed unlawfully; that is, that there was no authority from a competent source to justify its erection. Yet his contention, in legal effect, is not very different, for he claims that the particular structure which was erected was, as to him, a wrongful and tortious act, because, to quote from the brief, "it was so placed and constructed that of necessity it diverted the water out of its ordinary channel and against the plaintiff's land," and that all who participated in the tortious act are liable for all resulting damage. Now, it may be conceded that if one had unlawfully erected a pier, bridge, or other structure, which diverted the current so as to flood or otherwise injure the land of a riparian proprietor below, that an action on the case for the resulting damages would lie against the wrongdoer. To this extent are the authorities cited by the plaintiff in error. Hartshorn v. Chaddock (N. Y.) 31 N. E. 997, 17 L. R. A. 426; Armendaiz v. Stillman, 67 Tex. 458, 3 S. W. 678; Angell on Water Courses, § 388; Maxwell v. Bay City Bridge Co., 46 Mich. 278, 9 N. W. 410. But however reluctant plaintiff may be to concede that this structure was a lawful structure erected by lawful authority, there can be, in the absence of any evidence to the contrary, and of any averment in the pleadings based upon such a contention, no doubt but that such is the case. Being a lawful structure, it is not a nuisance; and those who constructed it are not, for that reason, to be regarded as trespassers or tort feasors. If the bridge was a lawful structure, and the injury done to the riparian lands of the plaintiff below does not constitute an appropriation of his land, or a "taking" thereof, within the meaning of the constitutional requirement as to compensation, and the injury is merely incident to the exercise of public authority acting within its jurisdiction, in good faith and without negligence, the injury is damnum absque injuria. As a riparian proprietor, the plaintiff was subject to all the injury, not amounting to a taking of his land, which might result from the lawful improvement of the navigation of the stream, or the construction of piers, abutments, or bridges, in the exercise of the public rights in and over the stream in respect of such matters. Gibson v. United States, 166 U. S. 269, 17 Sup. Ct. 578, 41 L. Ed. 996; Scranton v. Wheeler, 6 C. C. A. 585, 57 Fed. 803; Scranton v. Wheeler, 179 U. S. 141, 21 Sup. Ct. 48, 45 L. Ed. 126; Slingerland v. International Co., 169 N. Y. 60, 61 N. E. 995, 56 L. R. A. 494; High Bridge Lumber Co. v. United States, 16 C. C. A. 460, 464, 466, 69 Fed. 320; The Fitchburg, etc., R. Co. v. Boston & Maine R. Co., 3 Cush. 58; Mills v. U. S. (D. C.) 46 Fed. 738, 12 L. R. A. 673; Transportation Co. v. Chicago, 99 U. S. 635, 25 L. Ed. 336. The same principle applies in reference to public streets and roads. If the property of the abutter is not appropriated or taken, he is not suffered to recover damages for any mere change of grade. Smith v. Washington, 20 How. 135, 15 L. Ed. 858; Railroad Co. v. Bingham, 87 Tenn. 522, 11 S. W. 705, 4 L. R. A. 622; City of Pontiac v. Carter, 32 Mich. 164.

In Gibson v. United States, cited above, access by river to the riparian lands of the plaintiff was cut off during ordinary water by a dike constructed just above. The court, speaking by Chief Justice Fuller, said:

"Riparian ownership is subject to the obligation to suffer the consequences of the improvement of navigation in the exercise of the dominant right of the government in that regard." "In short, the damage resulting from the prosecution of this improvement of a navigable highway for the public good was not the result of a taking of appellant's property, and was merely incidental to the exercise of a servitude to which her property had always been subject."

The King Bridge Company was but an agent of the townships in the construction of this bridge, and is entitled to any exemption from liability which exists in favor of the supervisors or of the state itself.

In Larkin v. County of Saginaw, 11 Mich. 88, 82 Am. Dec. 63, an action was brought for the improper and defective construction of a bridge, which thereby constituted an obstruction to navigation. Special damages to the plaintiff were averred. The court held that the action of the board of supervisors in providing for the construction of the bridge was legislative, and that no action would lie. Said the court:

"What would be a nuisance if erected by an individual is not such when erected by authority of law and by the public, so as to confer a right of private action against the public therefor; and the same principle, I think, controls in this case that would, had the bridge been built by authority of the Legislature."

The plaintiff in error has cited and relied upon Maxwell v. Bay City Bridge Co., 46 Mich. 278, 289, 9 N. W. 410, as authority for the contention that any injury to the property of a riparian owner below by the construction even of a lawful bridge is recoverable. The point does not seem to have been considered, though there is a clause in the opinion which seems to support plaintiff's claim. The principle is, however, in conflict with both earlier and later Michigan cases in respect of incidental damages not amounting to either an appropriation or "an invasion" of the plaintiff's premises, but incident to a lawful public improvement. Pontiac v. Carter, 32 Mich. 164, 172; Scranton v. Wheeler, 113 Mich. 565, 71 N. W. 1091, 67 Am. St. Rep. 484. In respect of damages incident to a lawful change of grade, Cooley, C. J., in Pontiac v. Carter, said:

"The injury in all such cases is incidental to an exercise of public authority, which in itself must be assumed to be proper, because it is had by a public body acting within its jurisdiction, and not charged with malice or want of good faith. It must be, therefore, regarded as an injury that every citizen must contemplate as one that, with more or less likelihood, might happen."

6. The act of the King Bridge Company cannot be regarded as its personal act, but as that of the supervisors authorizing this bridge. U. S. v. Lynah (Jan. 26, 1903) 23 Sup. Ct. 349, 47 L. Ed. ——. If there has been any appropriation, it has been by the public, for the benefit of the public, and the action should have been against the townships and railway company. Certain it is that there was no appropriation of plaintiff's property, in any view of the case, prior to

the completion of the work and the acceptance of the bridge by the public. The evidence was conclusive that no injury had been done up to the time defendants turned the bridge over to the owner. How, then, can it be said that there has been any "appropriation" of plaintiff's land by the defendant in error? But has there been any appropriation of plaintiff's land by any one? There has been no such permanent flooding as was held to be an appropriation in Pumpelly v. Green Bay Company, 13 Wall. 166, 20 L. Ed. 557, and United States v. Lynah, cited above. The injury done has not been by flooding or any sort of possession, but simply by the natural effect of the flow of the current upon a bank against which it has always flowed. Its volume and force have been increased, but the force is exerted between the river banks, and has not involved the surface of plaintiff's land. The incidental injury was one which might have been guarded against by a protecting line of piles or by a sea wall, and the question at last is as to whose duty it was to properly protect a river bank, exposed to waste by the increased volume and force of the current to which it is exposed? That such a consequential injury is a taking or appropriation, we cannot agree.

There was no error in directing a verdict for the defendant, and the judgment is affirmed.