EMPLOYERS' LIABILITY ASSUR. CORPORATION, LIMITED, OF LONDON, v. UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION.

(Circuit Court of Appeals, Second Circuit. April 9, 1923.)

No. 237.

Insurance ⊜182—Builder of ship under "cost plus" contract held independent contractor.

That a contract for building a ship for the Shipping Board was on the "cost plus" plan, by which the Shipping Board agreed to pay the cost of the ship plus a percentage of profit, *held* not to affect the status of the builder as an independent contractor, so as to render the Shipping Board liable for premiums on policies of employers' liability insurance obtained by the contractor.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by the Employers' Liability Assurance Corporation, Limited, of London, against the United States Shipping Board Emergency Fleet Corporation. Judgment for defendant, and plaintiff brings error. Affirmed.

Plaintiff in error and below is a corporation issuing and dealing in what is sufficiently described as liability insurance. It sued defendant (hereinafter called "Shipping Board") to recover the premiums due upon certain policies of insurance issued by it, and designed to cover losses and liabilities caused by personal injuries sustained by employees, and accidents injuring persons other than employees, in and about the work carried on by the Fougner Concrete Shipbuilding Company at its "Yard No. 2," Flushing, Long Island. This yard was devoted to, and the work there carried on consisted of, the building of a ship, whereof the United States, through the Shipping Board, was not only to become the ultimate owner, but which, under a contract of common form, it owned as the ship took shape.

This contract was what is commonly described as a "cost plus" agreement. Under it the Shipping Board was to pay the expense of building, plus a percentage for profit. It had the right to exercise, and did exercise, authority in directing the manner and method of constructing the ship in question. As alleged and proved, the Fougner Company desired insurance as referred to in the complaint; they sought to obtain it through their own brokers. Those brokers procured the same from plaintiff, and inserted the name of the Shipping Board in the policies of insurance, so that they read as insuring the Fougner Company "and/or" the Shipping Board.

Before the policies expired, Fougner Company failed. It is now and has for some time been bankrupt. The Shipping Board seems to have taken over and completed the work of constructing the vessel. The policies were canceled by direction of Shipping Board. This action is brought to recover the premiums accruing prior to Fougner's failure. Summons issued against both Fougner Co. and the Shipping Board; only the latter was served. The court below directed a verdict for defendant; this writ followed.

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Koehler & Weyman, of New York City (Augustus J. Koehler, of New York City, of counsel), for plaintiff in error.

Geoffrey Goldsmith, of Washington, D. C. (Chauncey G. Parker, of Newark, N. J., and William Hayward and John E. Walker, both of New York City, of counsel), for defendant in error.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The inference is almost irresistible that this action was suggested by the fact that the name of the Shipping Board was inserted in the policies. The evidence showed no authority whatever for such mention of defendant; it was not asked for, never authorized, and seems to us to be almost the whim of a broker employed by Fougner Company. Argument, however, is now made, seeking to justify this suit, had the name of the Shipping Board nowhere appeared in the policies as issued, viz. that Fougner Company was no more than an agent or servant of the Shipping Board in and about the operation of Yard No. 2 and the construction of said ship; so that the Shipping Board was the master in respect of the servants covered by one liability policy, and the principal as to the strangers whose possible demands were covered by the other.

This depends upon the nature of the contract between Fougner and defendant. In its essentials it does not vary from any other agreement to produce a certain result at cost, plus a percentage. There are no unusual terms in it requiring consideration except possibly a clause whereby Fougner agreed to insure (inter alia as these policies insure) "in such form and insurance companies as are satisfactory to the" Shipping Board. The cost of such insurance was an item of cost producing the ship, and therefore defendant was under a contractual liability to pay Fougner Company for what these policies cost—not because they were policies of insurance, but because they were items of cost in ship production.

The court below ruled that Fougner Company was an independent contractor, a point upon which we have no doubt. Casement v. Brown, 148 U. S. 615, 13 Sup. Ct. 672, 37 L. Ed. 582, Chicago, etc., Co. v. Bond, 240 U. S. 449, 36 Sup. Ct. 403, 60 L. Ed. 735, and Salliotte v. King, etc., Co., 122 Fed. 378, 58 C. C. A. 466, 65 L. R. A. 620, are conclusive and dispense with further discussion, because it is obvious that the Shipping Board did not retain, obtain, or possess the right to direct, not only how the work should be done, but the results to be accomplished. It follows, from the holding that Fougner Company was an independent contractor, that the Shipping Board had no insurable interest in respect of the subject-matter of these policies.

Judgment affirmed, with costs.