**EVERGREEN INTERNATIONAL, S.A., Plaintiff,**

v.

**MARINEX CONSTRUCTION COMPANY, INC. and Norfolk Dredging Company, Inc., Defendants.**

**C.A. No. 2:04–22351–PMD.**

United States District Court,
D. South Carolina,
Charleston Division.

March 3, 2007.

---

Gordon D. Schreck, Julius H. Hines, Sean Houseal, Buist Moore Smythe and McGee, Charleston, SC, for Plaintiff.

Paul Francis Tecklenburg, Rivers Thomas Jenkins, III, Tecklenburg Law Firm, Charleston, SC; David Harlin Sump, Crenshaw Ware and Martin, Norfolk, VA, for Defendants.

## *ORDER*

DUFFY, District Judge.

This matter is before the court on Defendant Marinex Construction Company, Inc.'s ("Marinex") motion for summary judgment. For the following reasons, the court grants this motion.

## *BACKGROUND*

On February 14, 2002, the United States Army Corps of Engineers awarded dredging contract DACW60–02–C–0002 ("the Dredging Contract") to Defendant Marinex. The Dredging Contract was for "new work and maintenance dredging" in the Cooper River between Shipyard Creek and the turning basin above the North Charleston Container Terminal ("the Dredging Project"). On February 19, 2002, Marinex entered into a subcontract with Norfolk Dredging Company, Inc.

("NDC") for performance of a portion of the Dredging Project. The subcontract, which took the form of a two-page letter agreement, required NDC to "perform all work in accordance with U.S. Army Corps of Engineers Plans and Specifications."

On September 19, 2002, NDC laid a submerged pipeline across the marked federal channel at about the upper of the "Daniel Island Bend" section of the Cooper River. In the early morning of September 30, 2002, a 965 foot container vessel owned by Plaintiff Evergreen International, S.A. ("Evergreen"), the M/V EVER REACH, arrived at Charleston Harbor. The M/V EVER REACH continued its transit from Charleston Harbor up the Cooper River toward the North Charleston Container Terminal, which was upstream of NDC's dredging operation. In the course of this passage, the M/V EVER REACH struck NDC's submerged dredge pipeline, gashing its outer shell plating and spilling bunker fuel into the Cooper River.

Evergreen alleges numerous causes of action for negligence and various statutory violations against both Marinex and NDC. All of Evergreen's allegations against Marinex are premised on the assumption that Marinex itself was engaged in the dredging operations which caused the damages to the M/V EVER REACH. Marinex contends, however, that the evidence shows that Marinex acted only as a general contractor, and thus did not perform the supposedly negligent dredging operations at issue. Accordingly, with Norfolk acting as an independent contractor performing the dredging activities, Marinex claims it had no duty to Evergreen. In maritime cases, as in land-based negligence cases, the determination of a legal duty is a question of law. *Theriot v. United States*, 245 F.3d 388 (5th Cir.1998). Accordingly, Marinex asserts that summary judgment should be entered dismissing it from this case.

## STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding whether there is a genuine issue of material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The judge is not to weigh the evidence but rather to determine if there is a genuine issue for trial. *Id.* "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir.1991).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir.1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir.1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548.

## DISCUSSION

There is no dispute that Marinex subcontracted with NDC to perform the Dredging Project, the negligent performance of which allegedly caused the injury to the M/V EVER REACH. Evergreen concedes that NDC is an independent contractor and is not an agent of Marinex. Evergreen also recognizes the general rule that an employer is not liable for the negligence of an independent contractor. However, Evergreen notes that the exceptions to this general rule "are so numerous . . . they have eroded the general rule such that it can now be said to be 'general' only in the sense that it is applied where no good reason is found for departing from it." (Response at 10.) Specifically, citing to sections of *Restatement (Second) of Torts,* Evergreen notes that an employer is liable for the torts of a hired independent contractor where (1) the employer provides "plans and specifications" to the independent contractor which are insufficient to maintain the project in a reasonably safe condition; (2) the employer employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of harm to others unless special precautions are taken, and employer fails to take such "special precautions;" (3) the employer employs an independent contractor to repair a public thoroughfare; (4) the employer has an independent duty pursuant to statute or regulation to provide specific safeguards or precautions for the safety of others; and (5) the employer exercises a degree of supervisory control over the independent contractor and fails to exercise such control with reasonable care. Evergreen asserts that Marinex may be held liable for the tortious conduct of its independent contractor NDC under any of these exceptions. The court discusses the applicability of each of these exceptions in turn:

### (1) Insufficient Plans and Specifications

■ Citing to Section 410 of the *Restatement (Second) of Torts,* Evergreen contends that an "employer of an independent contractor is subject to the same liability for physical harm caused by an act or omission committed by the contractor pursuant to orders or directions negligently given by the employer, as though the act or omission were that of the employer himself." For example, "one who owes to others the duty to exercise reasonable care in respect to condition of his land or chattels and who employs an independent contractor to construct or repair a building or chattels under plans and specifications provided by him, is subject to liability for physical harm caused to such others by his failure to exercise reasonable care to supply plans and specifications reasonably sufficient to put or maintain the land or chattel in reasonably safe conditions." (Response at 11, citing *Restatement (Second) of Torts* § 410 cmt. d.) In this case, Evergreen asserts that Marinex had a duty to identify potential hazards to navigation which might arise during the project and that the dredging plans and specifications were "inadequate in that they did not require consideration of the position of the pipeline in relation to bends in the river and did not include measures to confirm the location of the pipeline in a previously dredged area or its presence on the channel bottom." (Response at 11.)

Evergreen has presented no evidence suggesting that Section 410 is applicable in the situation. In this case, the evidence shows that the plans provided by Marinex to NDC were derived directly from the underlying government contract with the Army Corps of Engineers. As such, there is no evidence that NDC acted pursuant to "orders or directions negligently given" by Marinex or that Marinex required NDC to

perform its work in a manner that would necessarily cause the injury in this case. Further, there no indication that Marinex had a duty to supply more specific plans to NDC. Accordingly, the court finds that this exception to the general rule exempting Marinex from liability does not apply.

### (2) Peculiar Unreasonable Risk of Harm and "Special Precautions"

■ *Restatement (Second) of Torts* § 413 states that a general contractor may not transfer liability to an independent contractor and disclaim responsibility for their negligent performance where the work to be conducted is necessarily ultrahazardous work. Evergreen argues that the dredging of the Cooper River was necessarily dangerous; therefore, under this principle, Marinex is liable for the torts of its independent contractor.

The principle described by Section 413 is applicable only to "work not of common occurrence which of itself involves serious risk to others." *South Carolina Natural Gas Co. v. Phillips*, 289 F.2d 143, 147 (4th Cir.1961). For example, it has been established in blasting cases that one in control of land has such an affirmative duty to his neighbor that he must see for himself that an independent contractor does not use dangerous explosives upon his land in such a way as to injure his neighbor's person or property. *See, e.g., Jones v. McMinimy*, 93 Ky. 471, 20 S.W. 435 (1892); *Langrell v. Harrington*, 42 Del. 547, 41 A.2d 461 (Del.Super.1945). In distinguishing between such necessarily dangerous work and work that only *may* be dangerous, the Fourth Circuit explained that "[a]lmost any activity which has caused harm would appear highly dangerous when so particularized that the view is restricted to the immediate activity which in fact has caused the harm." *South Carolina Natural Gas Co.*, 289 F.2d at 147. For example, in the case of excavating dirt by means of a borrow, the Fourth Circuit noted that "[i]f

the same equipment had been operated in the vicinity of playing children and the operator did not watch where he was going, he might be charged with recklessness and said to have created grave risk of harm to the children, but that is a risk which does not necessarily inhere in the work of procuring borrow. It is the kind of hazard which may be created by the immediate actor, but which does not arise out of the nature of the work generally to be done." *Id.* at 148.

In the case *sub judice*, dredging a navigable river, like excavating dirt, *may* be dangerous depending upon the circumstances and the conduct of the actors; however, there is no evidence that the act of dredging, by itself, presents any of the peculiar or ultrahazardous risks necessary for the exception described in Section 413 to apply. Accordingly, the court finds that Marinex is not liable for the negligence of its independent contractor under the ultrahazardous activity exception.

### (3) Repairing a Public Thoroughfare

■ Section 418 of the *Restatement (Second) of Torts* states that "[o]ne who is under a duty to construct or maintain a highway in reasonably safe condition for the use of the public, and who entrusts its construction, maintenance, or repair to an independent contractor, is subject to the same liability for physical harm to persons using the highway while it is held open for travel during such work, caused by the negligent failure of the contractor to make it reasonably safe for travel, as though the employer had retained the work in his own hands." Under this exception, Evergreen claims that Marinex is liable for NDC's negligent failure to make the Cooper River reasonably safe for travel.

Marinex notes that Comment *a* to this section specifies that "[t]he rule stated in this Section applies only to harm suffered

as a result of the dangerous condition of the highway or other public place, as distinguished from harm caused by the activities of the contractor." As such, the Comment to this Section specifically exempts employers from liability where the conduct of the independent contractor causes the harm. In this case, Evergreen has described only conduct by NDC in support of its claims. This conduct, accordingly, cannot be attributable to Marinex under Section 418 of the *Restatement*. Moreover, the rule of Section 418 is usually applied to impose liability upon a municipality which at common law or by statute is under a duty to maintain its highways for public travel. It cannot be maintained that Marinex had any statutory or common law duty to maintain the navigable waters. As such, the court finds that the exception to the general rule described by Section 418 does not apply in this case.[1]

### (4) Duty to Provide Safeguards or Precautions for the Safety of Others Pursuant to Statute or Regulation

■ Section 424 of the *Restatement (Second) of Torts* states that "[o]ne who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions." Evergreen asserts that the "permit from the Army Corps of Engineers and [the] regulations promulgated by the Coast [Guard]" constitute "administrative mandates" imposing upon Marinex a non-delegable duty to en-

sure that the location and marking of the pipelines were correct.

The court finds, however, that Section 424 of the Restatement is also inapplicable. Evergreen fails to identify a single administrative regulation creating a duty in Marinex to provide any specific safeguards in the Cooper River independent of its contractually obligated duties. While the contract between Marinex and the Army Corp of Engineers purports to require the Dredging Project to be performed in conformance with certain administrative regulations, Marinex did not perform the dredging. Accordingly, these regulations cannot be directly applicable, of their own force, to Marinex. For this reason, Marinex has no duty to Evergreen through any statute or administrative regulation and therefore is not liable to it for the conduct of its independent contractor.

### (5) Exercise of Control Over the Independent Contractor

■ Finally, Evergreen cites the rule from *Restatement (Second) of Torts* § 414, that "[o]ne who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Evergreen argues that Marinex exercised a degree of control over NDC's dredging such that Marinex is subject to liability for the harm caused by NDC. In support of this contention, Evergreen submits portions of the deposition of Marinex employee Willard Mizzell ("Mizzell"), who was the "Contractor Quality

---

1. The court further notes that it can find no case in which any court has held that this exception applies to hold an employer liable for an independent contractor's creation of unsafe conditions on a navigable waterway. *See e.g., Kelley Island Lime & Transport Co. v.* *City of Cleveland,* 47 F.Supp. 533 (D.C.Ohio 1942) (holding that a navigable river is not a "highway" within the meaning of an Ohio statute requiring municipalities to keep highways in repair and free from nuisance).

Control System Manager" or "CQCSM" for the Dredging Project. Under the provisions of the Dredging Contract, the CQCSM was in charge of monitoring contract compliance and safety requirements. According to both the Dredging Contract and Mizzell's own testimony, the CQCSM had authority to demand the correction of any safety deficiencies that he observed in the dredging operation and was also required to daily check the dredging operation to ensure continued compliance with the contractual requirements. Evergreen contends that it was Mizzell's failure to reasonably exercise this retained supervisory control that contributed to the casualty and that therefore Marinex is liable under the rule of section 414.

■ This argument also fails. A contractor is not liable for injuries or damage caused by the negligence of its subcontractor, unless it can be shown that the contractor retained or exercised control over the subcontractor's work. *See Ross v. Dae Julie, Inc.,* 341 Ill.App.3d 1065, 1070, 793 N.E.2d 68, 72, 275 Ill.Dec. 588, 592 (2003) (manufacturing plant owner did not owe duty of care to independent contractor's employee because independent contractor was free to perform his work in his own way); *see also Amann v. City of Tacoma,* 16 P.2d 601, 606, 170 Wash. 296, 308 (Wash.1932) (stating that "the same rule, of course, applies as between contractor and subcontractor as does between master, or owner, and the principal contractor" where a plaintiff seeks to hold a contractor liable for injuries cause by the negligence of his subcontractor). Comment *c* to Section 414 establishes the parameters of the "retention of control" concept:

"It is not enough that he has merely a general right to order the work stopped or resumed, to inspect the progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. *There must be such a retention of right of supervision that the contractor is not entirely free to do the work in his own way.*"

*Restatement (Second) of Torts* § 414 cmt. c; *see In re Garvey Marine, Inc.,* 424 F.Supp.2d 1109, 1115 (N.D.Ill.2006) (applying Comment c to Section 414 in an admiralty case); *see also Hines v. British Steel Corp.,* 907 F.2d 726, 730 (7th Cir. 1990) (same); *Salliotte v. King Bridge Co.,* 122 F. 378, 380 (6th Cir.1903) (holding that where employer, through its engineer or other agent, exercised some kind of general supervision over dredging by independent contractor, liability is not imposed on employer where such supervision is only for the purpose of seeing that the specific work is done in accordance with the contract). In this case, the evidence before the court indicates that Mizzell acted as supervisor to ensure contractual enforcement and quality control. Evergreen offers no evidence in support of its conclusory assertion that Mizzell "personally supervised all phases of NDC's work." As such, the court finds that Evergreen has not presented a genuine issue that Marinex exercised such a degree of control over NDC that it should be held liable for the tortious conduct of NDC.

■ In conclusion, the court finds that if the dredging of the Cooper River was performed in a negligent or unskillful manner, it was the negligence of the independent contractor NDC, and not that of the general contractor, Marinex. NDC contracted to do that particular dredging work in accordance with the plans and specifications already prepared by the Army Corps of Engineers. They did not become the general servants of Marinex,

but only contracted to do for that company a specific work. That Marinex, through its agent, exercised some kind of general supervision, does not affect the question, where such supervision is only for the purpose of seeing that the specific work is done in accordance with the contract. *See Salliotte,* 122 F. at 380. In such circumstances, those who contract to complete a project according to plans furnished are independent contractors, responsible for their own acts of negligence. *Id.* "A general contractor is not liable to third persons for the negligent acts of an independent subcontractor unless the thing contracted to be done is necessarily a public nuisance, or the injury is a direct result from the act or thing which the independent contractor is required to do." *Id.* This principle of non-liability for the negligence of an independent contractor applies to and exempts Marinex, the general contractor, from liability in this case. *See id.* (citing *Powell v. Virginia Const. Co.,* 88 Tenn. 692, 13 S.W. 691, 17 Am.St. Rep. 925 (1890); *Slater v. Mersereau,* 19 Sickels 138, 64 N.Y. 138 (1876)). For these reasons, the court grants Marinex's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant Marinex Construction Company, Inc.'s Motion for Summary Judgment is **GRANTED.**

**AND IT IS SO ORDERED.**