No. 1932.

EUGENIO ARMENDAIZ *v*. JAMES STILLMAN ET AL.

1. EVIDENCE.—The fact that evidence may be weak and have but slight bearing on the issue to be tried, affords no reason for its exclusion.

2. EVIDENCE OF EXPERTS.—The evidence of experts should be confined with much strictness within the rules regulating its admission, since from its very nature, a relaxation of these rules may lead to great abuses. To illustrate: An expert who sat and listened to conflicting evidence regarding the construction of a jetty, and its effect in changing the current of a river whereby the plaintiff claimed that his land had been cut away to his damage, qualified himself as an expert, and testified to some (though limited) personal knowledge of the facts. He was asked whether it was

his opinion that the jetty produced, or brought about, or had any part in producing any part of the damage described as having been sustained by the plaintiff. *Held:*

(1) An expert could give his opinion on a state of facts pertaining to his art or science which he might assume to be true, and the court and jury must then decide whether his assumption of facts was correct.

(2) But he could not give his opinion as an expert, as to his conclusion from facts testified about in conflicting testimony, the existence or non-existence of which should be determined by the court or jury, and not by the expert.

(3) If his opinion was desired, as an expert, regarding the effect of given facts in producing results, it should have been sought by stating a hypothetical case, and thus his judgment and opinion on the whole evidence that he had heard would have been avoided.

(4) The answer should have been excluded, for it required the expert to usurp the province of the jury and pass on disputed facts.

3. RIPARIAN RIGHTS—DAMAGES.—It is the right of every riparian proprietor have the stream fronting his land flow in its natural channel, and if it be diverted from that channel to his damage by obstructions, an action will lie. In such an action it is no defense that the defendant did not believe or foresee that damage would result from the obstruction.

4. SAME.—If a river is cutting away the bank, its owner may resort to such means as will confine it to its natural channel, but if obstructions be placed in the stream which so change the channel as to cause destruction to the land of another riparian proprietor, an action will lie to recover damages, without reference to the degree of care taken to avert the injury, or the inability of the defendant to foresee it.

APPEAL from Cameron. Tried below before the Hon. John C. Russell.

The opinion sufficiently presents the case. The record is immense, containing much pleading and evidence, and an extensive map, but the opinion contains all that is necessary to a proper understanding of the points decided in it.

*Waul & Walker,* for appellant. On the testimony of the expert Clark they cited Hugh Cooper v. The State, 23 Texas, 331; Milwaukee Railroad Company v. Kellogg, 94 United States, 469; Rogers's Expert Testimony, sections 24, 25, 26; Hunt v. Lowell Gas Light Company, 8 Gray, 169; State v. Felter, 25 Iowa, 67, 74.

On the question of damages they cited Wadsworth v. Tillotson, 15 Connecticut, 366; Crittenton v. Alger, 11 Metcalf, 284; Mississippi Central Railroad Company v. Mason, 51 Mississippi, 234; Webb v. Portland Manufacturing Company, 3 Sumner, 189; Rhodes v. Whitehead, 27 Texas, 304; Haas v. Choussard, 17

Texas, 588; Parker v. Griswold, 17 Connecticut, 299; Pratt v. Lamson, 2 Allen, 275; Crooker v. Bragg, 10 Wendell, 260; Boyd v. Conklin, 20 Northwestern Reporter, 595; Bicket v. Morris, L. R. H. L. Sc. App., 47, 61; Whaley v. Railway Company, 50 L. T., 472; Cooley on Torts, 320, 582, 583; Wood's Nuisance, section 386; Clinton v. Myers, 46 New York, 516; Merritt v. Brinkerhoff, 17 Johns, 306; Tuthill v. Scott, 43 Vermont, 525; Webb v. Portland, 3 Sumner, 189; 3 Kent's Commentaries, 427; Angell on Water Courses, section 95; Gould on Waters, sections 160, 293, 299, 417; Fowle v. New Haven, etc., 107 Massachusetts, 352; 112 Massachusets, 334.

*Wells & Hicks,* for appelles, on the question of damages, cited Bennett v. Lockwood, 20 Wendell, 223; Crain v. Petrie, 6 Hill, 523; Vandenburgh v. Truax, 4 Denio, 466; Harrison v. Berkley, 1 Strobhart, 525, 549; Walrath v. Redfield, 11 Barbour, 371, 374; 2 Hilliard on Torts, 627, and cases; Blood v. Nashua, 2 Gray, 137; Enos v. Hamilton, 27 Wisconsin, 256; Dutton v. Strong, 1 Black, 23; Angell on Waters, section 547, note 2; Railroad Company v. Scheunier, 7 Wallace, 272; Lockwood v. Railroad Company, 37 Connecticut, 387; Yates v. Milwaukee, 10 Wallace, 497; Grant v. Davenport, 18 Iowa, 179; Richardson v. Boston, 24 Howard, 188; Menzies v. Breadalbane, 3 Wilson and Shaw, 235; Menzies v. Breadalbane, 3 Bligh (N. S.), 421; Rex v. Pagham, 8 Barnewall and Cresswell, 355; Rex v. Trafford, 1 Barnewall and Adolphus, 874; Jones v. Soulard, 24 Howard, 41; Adams v. Barney, 25 Vermont, 225; Harding v. Whitney, 40 Indiana, 379; Merritt v. Parker, 1 Coxe, New Jersey, 460; Pierce v. Kinney, 59 Barbour, 56; Slater v. Fox, 5 Hun, 544; Longstreet v. Harkrader, 17 Ohio State, 23; Diedrich v. Railroad Company, 42 Wisconsin, 248; Delaplaine v. Railroad Company, Id., 214; Boorman v. Sunnuchs, Id., 233; Olson v. Merrill, Id., 203; Larson v. Furlong, 50 Id., 681, 691.

STAYTON, ASSOCIATE JUSTICE. This action was brought to the February term of the district court for Cameron county, by the appellant, to recover damages claimed to have resulted to him from the destruction of property owned by him on the Mexican side of the Rio Grande.

The plaintiff alleged that he was the owner of improved real property opposite the city of Brownsville, and that in the year 1878 the defendants placed a jetty in the Rio Grande river, which

so changed its current as to cause it to flow against his property, which it had not theretofore done, whereby his property was destroyed. The cause was tried without a jury, and the conclusions of fact and law found were as follows:

"1. The defendants in the spring of 1878 constructed the work in question, called 'The Fields Jetty,' and that the same was constructed on their own land, and solely with the object and purpose of protecting the city of Brownsville from threatened and imminent danger from the effect of the eddy, which cut away and destroyed the Brownsville or Texas bank or shore during high water in the river, and that said work accomplished said object and protected the front of said city of Brownsville.

"2. That at the time of the erection of said 'Fields Jetty,' the defendants did not intend injury or damage to the opposite or Mexican bank of the river or the property of plaintiff, but only to protect the front of the city of Brownsville, and that with ordinary prudence and foresight and judgment, defendant could not foresee that said 'Fields Jetty' was at all likely to produce, occasion or cause any damage, washing away or loss to plaintiff's property on the opposite side of the river, or to apprehend any probability of any such damage.

"3. I further find as a matter of fact that the said works of defendants, being the said 'Fields Jetty,' did not cause, occasion or produce the said loss or damage to plaintiff's property, or to any portion of the same, but that the said loss and damage were produced and caused by other agencies.

"4. I further find as a matter of fact, that the plaintiff has sustained damage to the amount substantially as claimed in his pleadings, and that he was the owner of the property so damaged and destroyed.

"As a conclusion of law, I find that the defendants were in law justified in erecting the works complained of, in the manner and form and under the circumstances, and for the purpose of its erection, as shown by the evidence in this case; and that if the damage complained of by plaintiff had resulted therefrom (which it did not), it would have been *damnum sine injuria,* and the defendant not responsible therefor in this action."

The injury to the plaintiff's property occurred mostly in the year 1878. There was much and conflicting evidence as to whether the jetty placed in the river by the defendants caused the destruction of the plaintiff's property, and it is here claimed

that the evidence so heavily preponderates in favor of the affirmative of that proposition, that upon this ground the judgment should be reversed.

In view of other questions in the case, it will not be necessary to examine and decide that question, or to express any opinion upon it. The cause was not tried until the February term, 1884, and in the month preceding an engineer made a survey and map of the river, showing its depth, breadth and general outlines, for some distance above and below the place of the injury, and at that place. This survey was made when the water was low, and when the map was offered in evidence in connection with the testimony of the person who made it, explanatory of it, both were objected to on the ground that the evidence was irrelevant; that it had been shown that the river often suddenly changed its course, and for the reason that the evidence did not show the depth, breadth and course of the river at high water, at the time the injury complained of occurred. The objections to the evidence were overruled, and we think correctly. It was relevant to the issue to be tried, and served at least to give the court a general knowledge of the river.

The other evidence tending to show changes in the river, occuring between the time of the injury and the making of the survey and map, and showing the general flow of the river at low and high water, was all before the court, and the map, if it served no other legitimate purpose, tended to enable the court to apply properly the entire evidence. That evidence may be very weak, and have but slight bearing upon the issue to be tried, is no reason for excluding it, if it be relevant.

John S. Clark, who qualified himself to testify as an expert, having no knowledge of the river prior to the month preceeding the trial, in that month examined the river above, below and at the place of the injury, and after hearing the evidence of the witnessess for the plaintiff and defendants, which was conflicting, was asked the following question: " Is it your opinion that the Fields jetty of 1878, produced or brought about, or had any part in producing any part of the damage described as having been sustained by plaintiff ? " This evidence was objected to on many grounds, but the objections were overruled and the witness answered: " In my judgment the Fields jetty did not and could not have any effect in producing the damage."

The ground given for overruling the objection was, " because witness was now testifying as an expert, and had heard all the

testimony and seen all the maps." This is a character of evidence which, while admissible under given restrictions, unless carefully confined within the rules regulating its admission, may lead to great abuses.

In the case before us, the expert knew nothing of the facts existing at the time the injury complained of occurred, except as he could ascertain them from the evidence of the other witnesses who had testified in the case, and from an examination made long after the injury. The evidence of the witnesses upon the vital questions in the case was as conflicting as evidence well could be. The answers of the witness show that he based his opinion largely on what he had heard from other witnesses during the trial, and that in some respects he assumed to decide that the evidence offered by the plaintiff was not true. If a witness who is offered as an expert has knowledge of facts on which he bases an opinion, he may be permitted to give his opinion upon the state of facts which he assumes to be true; but if he states the facts, it rests with the court or jury trying the case to determine whether his assumption of fact be true, and if that be found to be untrue, his opinion is of no value.

If such a witness bases his opinion on a state of facts which he has heard other witnesses testify to, the value of his opinion depends upon the actual existence of the facts on which he bases it; and whether the facts so existed must be determined by the court or jury, and not by the expert. In cases in which the evidence is conflicting on the facts on which the opinion of the expert is founded, he can not be permitted to determine what the facts actually were, and to give an opinion upon his own conclusion upon such conflicting evidence; for it is the province of the court or jury trying the case to determine the existence or non-existence of the facts on which the expert's opinion is based.

The evidence conflicting, if the defendants desired the opinion of the expert upon the state of facts which the evidence offered by them, including the evidence of the expert in so far as he stated facts, tended to establish, then they should have sought his opinion upon the hypothetical case thus made. This they did not. They simply asked for and received an opinion based upon conflicting evidence, which necessarily required the witness to pass upon disputed facts.

If the facts stated by the witnesses for the plaintiff were true, the opinion of the expert was erroneous; for the evidence of the

witnesses who testified to facts within their own knowledge and observation, if true, established facts which would render the correctness of the opinion of the expert impossible. The answer of the witness should not have been received, and the ruling of the court in this respect will require a reversal of the judgment.

The record shows that while the court below found that the injury to the plaintiff did not result from the building of the jetty by the defendants, and on this ground rendered a judgment in their favor; yet, that the judgment would have been the same had it have found that the injury did so result, unless it was made to appear that " with ordinary prudence, foresight and judgment, defendants could have foreseen that the jetty was likely to produce, occasion, or cause any damage, washing away or loss to plaintiff's property on the opposite side of the river, or to apprehend any probability of any such damage."

Evidence tending to show that defendants could not have foreseen that injury would be caused by the erection of the jetty was admitted, over the objection of the plaintiff, which, aside from the manner in which proof of this fact was sought to be made, we are of opinion should have been excluded.

It is the right of any owner of land fronting on a flowing stream to have it continue to flow in its natural channel, and any obstruction placed in such a stream which so diverts it as to cause injury to the land so fronting, is an injury for which an action will lie; and that great care may have been used by the person diverting the stream, and that he may have been unable to foresee that his act would injure another in no way affects the right of the injured person to compensation for the injury done to his property, unless it be in cases in which the diversion is made in pursuance of legislative authority granted to secure some work of public utility.

This case does not call for an examination of the exception above stated which has sometimes been recognized, nor does it call for a consideration of the exception to the general rule above stated which exists when the water of a flowing stream is put to a use not unreasonable by another riparian proprietor.

If the river was cutting away the land of the defendant it was his right to protect his own bank in any method which would best confine the river to its natural channel; but if, in protecting his own property, he and those assisting him put such obstructions in the river as caused the current to strike the land of the

plaintiff and carry it away, which but for such obstructions it would not have done, then the defendants are liable for such injury as the plaintiff has sustained by their act, without reference to the degree of care used by the defendants, or their ability to foresee what would be the result of their acts, or to their intentions.

We have deemed it proper to notice this matter in view of another trial, and because the counsel for defendants insists that the defendants are not liable if they caused the injury, if it resulted from work carefully done in protection of the property of one of the defendants.

For the error noted, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered March 1, 1887.