GEORGE H. LEE v. WILLIAM HEUMAN, GUARDIAN.

No. 863.

1. Courts—Disqualification of Judge.—Casual conversation and expression of opinion by an attorney with reference to a controversy, when he does not in any manner become the counsel of a party, does not disqualify the attorney, when he becomes judge, to try the case.

2. Judgment Against Insane Person—Practice—Excuse for Failure to Plead.—A judgment against an insane person is valid until set aside by some proper proceeding; but it may be set aside by the court rendering it upon principles governing courts of equity in the nature of a review, by showing that the defendant was insane and incapable of understanding the purpose of the citation and of making a defense to the action, and by showing that the judgment is unjust, and that there is a meritorious defense to the case.

3. Evidence—Opinion of Expert Upon Different Groups of Facts Proven—Rules Governing Admission of Expert Testimony.—It is not essential in the examination of an expert witness that each question should embrace every fact which it might be contended affected the value of the service; different hypotheses may be put, so as to elicit opinions to different groups of facts; but there must be evidence of the existence of the facts supposed, and the witness should not be left to decide what facts are established by the evidence, or to take into consideration facts known to himself, but not appearing from the evidence.

4. Same.—See this case as to the admissibility of expert testimony in a suit by a surgeon against an insane person for the value of professional services rendered without the consent or knowledge of such person.

5. Admission of Incompetent Evidence—Reversible Error.—Where there is a sharp conflict of evidence, the admission of incompetent testimony will necessitate the reversal of the judgment.

APPEAL from County Court of Galveston. Tried below before Hon. S. S. HANSCOM.

*Scott, Levy & Smith,* for appellant.

*W. B. Denson,* for appellee.

WILLIAMS, ASSOCIATE JUSTICE.—Appellee, as guardian of Ernst Heuman, a lunatic, instituted this suit to review and set aside a judgment by default, obtained in the County Court by appellant against Ernst Heuman, before the latter had been adjudged insane. The petition alleged, in substance, that the former suit was brought to recover the sum of $500, claimed by appellant as compensation for performing a surgical operation upon Ernst Heuman; that citation was served upon Heuman, a trial had, and judgment rendered against him, while he was insane and incapable of representing himself, and when he was unrepresented by guardian ad litem or otherwise; that the amount claimed by and awarded to appellant, as his fee, was excessive and unreasonable, and that $100 would have been adequate compensation for the services rendered. It was also alleged that execution had issued on the judgment, and that the amount thereof had been collected by

the sale of property, and received by appellant. The prayer was that the judgment be set aside and canceled or that such decree be entered as "will be just and equitable" and for general relief.

It is unnecessary to state the defensive pleadings. The case was tried by jury, the court submitting special issues, and a verdict was returned upon which judgment was rendered setting aside the former judgment, allowing appellant only $300 as compensation for his services, and adjudging that appellee recover the $200 collected in excess of that sum.

The question in regard to the disqualification of the county judge will not arise on another trial and we deem it unnecessary to discuss it at any length. We are of the opinion, however, that the evidence adduced on that point failed to show that the relation of attorney and client ever existed between the county judge and Heuman. The evidence shows only conversations between Montgomery, the agent of Heuman, and the attorney, who afterwards became county judge, in which the latter expressed some opinion as to questions which are not involved in the present litigation, but does not show that the attorney was employed or in any way enlisted in or identified with the controversy. Montgomery was not authorized to engage counsel for Heuman, and it does not appear that he did so. Mere casual conversations and expressions of opinion by an attorney, with reference to controversies when he does not in some way become the counsel of a party to it, can not, by the most liberal construction of the language of the Constitution, be held to disqualify him when he becomes judge to try the cause. He has not "been counsel in the case." The cases referred to do not express any different doctrine. Slaven v. Wheeler, 58 Texas, 23; Newcome v. Light, Id., 141. The question there was not whether the relation of attorney and counsel had existed, but whether or not, it having existed with reference to the controversy, that fact disqualified the attorney from sitting as judge in the case which grew out of such controversy. Here it is not shown that the relation was ever assumed with reference either to the controversy or to the case in court.

We are of the opinion that the court did not err in overruling the exceptions to the petition. It is true that suits may be brought and judgments rendered against insane persons, and such judgments are valid until set aside in some proper proceeding. They are subject, however, like other judgments, to be reviewed and set aside by a court of equity upon a proper showing. After the term at which they are rendered has closed they become final like other judgments, and are subject to be reviewed only by appellate proceedings or by the court rendering them upon the principles which govern courts of equity in proceedings in the nature of a review. Under such principles a party against whom a judgment has been rendered upon a claim against which he had a good defense will be allowed to reopen the judgment and set up his defense, provided he proceeds with proper diligence and can show a good reason why he did not present his defense before the judgment

was rendered. In this case the reason for not presenting the defense set up is, that the defendant in the first suit was insane and incapable of understanding the purpose of the citation and of making a defense to the action. We can not see wherein his situation is worse than would be that of a defendant who has been prevented by sickness or other providential hindrance from asserting rights at the proper time; nor why his guardian, when qualified to represent him, should not be heard in order to protect his interests and free him from an unjust judgment rendered against him when he could not defend himself. Of course, if the judgment was not unjust, if there was no meritorious defense to the suit, there is no ground upon which equity will interfere. But if the judgment was unjust, and established a claim for which the lunatic was not legally liable, his insanity should be treated as a sufficient excuse for the failure to plead to the former suit. 1 Black on Judgments, sec. 205; Denni v. Elliott, 60 Texas, 337; Ewing v. Wilson, 63 Texas, 88.

The allegations of the petition stated a case in which a judgment for $500 had been taken when the claim did not exceed $100, thus showing, if true, that the judgment was unjust and that there was a just and meritorious defense against the greater part of the claim. Parts of the petition were excepted to as being too general, but they were made specific by other averments. The allegation in regard to the sale of the property under execution was proper in order to show the right to recover back from appellant any amount received by him in excess of the sum to which he should be found entitled. The characterization of the execution and sale as illegal, as well as other conclusions of the pleader, were immaterial. The merits of the cause of action depended on the facts stated. It was proper for plaintiff, as part of the history of the case and of his appointment as guardian, to allege the adjudication of the insanity of Ernst Heuman by the County Court.

There were objections urged during the trial to many questions asked medical experts in order to elicit their opinions as to the value of the service rendered by appellant to Ernst Heuman on the ground that such questions did not properly state the facts upon which the opinion should be based. It is not essential in conducting an examination of this character that each question should embrace every fact which it might be contended should affect the value of the service. Different hypotheses may be put so as to elicit opinions as to the different groups of facts, though there must be evidence of the existence of the facts supposed. Thus in the present instance it is contended, that the amount of the compensation for the operation of litholopaxy would depend upon all the circumstances of the particular case, such as symptoms presented by the patient, the emergency of the situation, the danger to life, and the skill of the particular operator. This may be true, and yet we think it would be admissible to prove what would be a proper charge for such operations in ordinary

cases, leaving the jury to determine from all the facts how far that should be varied in order to give proper remuneration for the particular service. It is true, however, that expert witnesses giving their opinions upon questions such as were here presented to them, should be made to testify with reference to facts in evidence, and that questions should state facts upon which the expert is to base his opinion. He should not be left to determine for himself what are the facts, for this would enable him to decide what facts are established by the evidence, or to take into consideration facts that are known to himself but not appearing from the evidence. The assumed facts upon which the opinion is to be based must be stated in order that the jury may see from the evidence whether or not those facts exist and thus determine the value of the opinion. We can not see, however, that the mere fact that the names of the parties were called in putting the questions made them objectionable. Armendaiz v. Stillman, 67 Texas, 458.

For the reasons given, we do not think the question asked Dr. Hadra was objectionable. We think it was proper also to allow Dr. Singer to state the reasonable charge for a successful operation of litholopaxy upon a man worth $10,700, though no other facts were included in the question as affecting value. The court did not know that the other facts referred to would necessarily influence the amount of compensation; but if such was the case, it was for the parties to develop it before the jury. There is other matter in the testimony of this witness, however, which should have been excluded. Appellant testified that he was summoned to the bedside of Heuman when he was suffering intensely with pain caused by stone in the bladder. Heuman was under the influence of chloroform; his life was in danger, and it was determined by appellant and other doctors with whom he conferred, that the operation was absolutely necessary in order to save the patient's life. It was performed while Heuman was under the influence of chloroform. Efforts had previously been made to induce him to submit to the operation, which had met with persistent refusal. Plaintiff's principal contention is, that during all of this period Heuman was insane and incapable of contracting and of understanding judicial proceedings. His evidence upon which he relies to establish insanity covers the period when the operation was performed. If the evidence is sufficient to show that Heuman was insane when served with citation, the same evidence would establish his insanity at the date of the operation. The defendant, therefore, contends that the operation was a necessary one and that Heuman's estate is liable for it, notwithstanding his insanity. If Heuman was sane, the question as to the value of the service rendered was immaterial as he would be bound by the former judgment. If on the other hand he was insane, the questions as to the necessity of the operation and its value became important; but, as in that event he must have been incapable of fixing by agreement a compensation for the surgical operation, we do not see how the

fact that it was performed without his knowledge or consent would affect the question as to its value.

In this state of the case a question was put to the witness Singer containing the following: "A surgeon is called, who performs the operation without consultation and without any agreement with the patient as to whether it should be done or not." The question proceeded to enumerate other facts, and asked for the witness' opinion as to the value of service rendered, and the following occurred: "Do I understand you to say that he was not consulted about the operation?" "Yes." "You say there was no understanding about it? The man did not know there was anything to be done? Was anything spoken about the operation?" "No." "I do not know that a man feels in duty bound to pay anything at all."

As plaintiff's whole case depends upon his evidence that Heuman was insane, he should not, we think, be allowed to use the circumstance that the insane man did not consent to the operation to affect its value. . And whether that is true or not, it is unquestionably true that the answer of the witness stated his opinion upon a question with which he had nothing to do. Whether or not Heuman would feel bound to pay for such services was wholly immaterial. The surgeon's right to recover would depend upon the law applicable to the facts. Upon such a question opinion of the medical expert was not competent evidence. His answer should have been restricted to a statement of the value of the services rendered.

The following question was put to Dr. Sikes: "I want you to state to the jury, knowing Heuman as you do, and that he was suffering greatly at the time that the operation was performed, what would be a reasonable charge for taking that stone from his bladder by the operation known as litholopaxy? The evidence of those about him is that he was suffering very greatly; that they had given him morphine and that had failed to relieve him, and that they then gave him chloroform. The doctor went there, found him under the influence of chloroform, and performed the operation. I want you to state what would be the reasonable charge for that operation under those circumstances?"

The question was objectionable in that it permitted the witness to take into consideration facts about Heuman which may have been known to himself but not stated in evidence. But we are inclined to the opinion, that this witness probably stated all of the facts known to him upon which his opinion was based. The bill of exceptions is not full enough to enable us to determine this definitely, and it is unnecessary that we should do so, as what we have said will be sufficient for the purposes of another trial. It is to be observed that the question does not call for the opinion of the witness as to the value of the service, based upon his knowledge of the character of the service, but upon his knowledge of the patient. The statement of the witness Montgomery, that appellant had offered to accept $250 in order to get

a settlement, plainly related to an offer to compromise, and should have been excluded. It seems to have been volunteered by the witness without question or objection, and when appellant moved to exclude it, the court remarked in the presence of the jury, that an unaccepted offer of compromise was not proper evidence and should not be considered. This left to the determination of the jury whether or not the statement was of the kind mentioned by the court, when the court should have directly ruled upon and excluded the evidence.

We can not see that the refusal to permit the appellant to prove the statement made to him by the hospital staff as to the condition and symptoms of the patient were material. The facts were fully developed showing such condition, and there seems to be no conflict of evidence as to what it was. At any rate, the bill of exceptions fails to show that anything more was stated to appellant than was proven on the trial.

We think that the testimony of the witness Blum as to the charge made against him by Dr. Hadra for the operation of lithotomy was, under the circumstances of this case, improperly admitted.

The evidence, the admission of which we have held to have been improper, may have affected the result. The opinions of the experts as to the value of the services rendered by Dr. Lee varied, there being testimony in his behalf sufficient, to say the least of it, to raise a sharp conflict with that offered by plaintiff. If the opinions of those witnesses who testified for him were accepted, they show that this charge was not excessive. In this state of the evidence the admission of incompetent testimony necessitates a reversal of the judgment.

We express no opinion as to the weight of the evidence upon the several issues. The questions as to the sufficiency of the verdict need not be passed upon.

*Reversed and remanded.*

Delivered June 20, 1895.