## ADKINS–POLK CO. v. JOHN BARKLEY & CO., Limited.    (No. 2004.)

Court of Civil Appeals of Texas.    El Paso.
June 30, 1927.

Rehearing Denied Aug. 17, 1927.

**1. Sales ☞52(2)—Telegrams between seller and sugar broker held not inadmissible against buyer, as communications between seller and seller's agent not authorized by buyer and not constituting contract; broker being agent of both parties.**

In an action for the breach of a contract to buy sugar entered into through a broker, telegrams passing between the seller and broker respecting the terms of the sale *held* not inadmissible against the buyer, on the ground that they were communications between the seller and his agent not authorized by buyer and not constituting contract; the broker not representing the seller, but acting as a mere middleman, and being the agent of both parties to transmit their propositions.

**2. Sales ☞52(2)—Sugar broker held middleman bringing buyer and seller together, and hence special agent of each to transmit propositions.**

In an action for the breach of a contract to buy sugar entered into through a broker, evidence *held* to show that the broker was a mere middleman, and hence that he was the special agent of both buyer and seller for the purpose of transmitting the propositions made by each.

**3. Brokers ☞6—Broker acting as middleman to bring parties together is "common agent" of both.**

In so far as a broker acts strictly as a middleman to bring parties together, as to effect a sale or purchase, he is the "common agent" of both.

**4. Sales ☞52(2)—Sugar broker's letter to seller held not inadmissible against buyer, as confirmation of contract, not part thereof; buyer's offer not having been accepted theretofore.**

In action for the breach of a contract to buy sugar, sugar broker's letter to seller *held* not inadmissible, on ground that the letter was mere confirmation of sale already made, and not a part of the contract; buyer's offer not having been accepted theretofore.

**5. Evidence ☞471(19), 474(15)—Witness taking sample of sugar might testify to free running character of entire lot of sugar, as against contention of want of knowledge and that testimony was mere opinion.**

Where witness extracted a four-pound sample of sugar from several barrels of 500 barrel lot and found the sugar to be free running, he might testify that 500 barrels of sugar was free running; the contention that witness did not have knowledge of the facts, and that his testimony was a mere opinion, going to the weight of the evidence.

**6. Evidence ☞472(9)—Testimony that sugar sold conformed to free running sample held not inadmissible, as invading province of jury.**

In an action for the breach of a contract to buy sugar, where the sole issue submitted was whether the sugar delivered was in conformity with free running sample, testimony that the sugar was free running *held* not inadmissible, on the ground that this was an issue which the jury would be called on to answer.

**7. Sales ☞161—Delivery to carrier is delivery to purchaser, in absence of contrary agreement.**

In the absence of an agreement to the contrary, where goods are to be shipped to the buyer, delivery to the carrier for transportation is delivery to the buyer.

**8. Sales ☞73—Sample is standard of comparison in determining whether goods sold are of requisite quality.**

Where a sale is made by sample, the sample itself is the standard of comparison to be used in determining whether the goods are of the requisite quality.

**9. Sales ☞271—In sale by sample, goods are impliedly warranted to be of quality of sample, and, unless bulk corresponds thereto, buyer may reject.**

Where goods are sold by sample, warranty is implied that the goods will be of the quality and character of the sample, and this is a condition precedent to the completion of the sale, and, unless the bulk of goods tendered correspond to the sample, buyer may reject them.

**10. Sales ☞161—Delivery f. o. b. railroad cars pursuant to buyer's order completes sale, in absence of contrary agreement.**

In the absence of an agreement to the contrary, the delivery of goods f. o. b. railroad cars in pursuance of the buyer's order completes the contract of sale at that time and place.

**11. Sales ☞182(2)—Delivery in sales contract is question of law, where facts are undisputed.**

Where the facts respecting the delivery of goods by seller to the buyer are undisputed, question of delivery is one of law.

**12. Sales ☞168(5)—Whether goods correspond to sample is determined at place of shipment, in absence of contrary agreement.**

In the absence of an agreement to the contrary, in a sale by sample, whether the goods tendered correspond in quality to the sample shown is to be determined at the place of sale or point of shipment.

**13. Sales ☞168(5)—Goods sold by sample and to be delivered and inspected at shipping point may be inspected at destination, but sole effect is to determine condition at shipping point.**

Where goods are sold by sample and are to be delivered at the shipping point and to be inspected there, an inspection of the goods may be made at the destination, but its only effect is to determine the condition of the goods at the shipping point.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

14. Sales ⬥182(1)—Whether sugar was in conformity with samples submitted buyer held properly submitted to jury, in absence of agreement as to time when or place where comparison was to be made.

Where there was no agreement in sale of sugar by sample as to time when or the place where an inspection or comparison of the shipment with the samples was to be made, court properly submitted issue to jury whether sugar that was delivered on board cars at shipping point was in conformity with samples submitted to buyer where sale was complete when delivered to carrier at shipping point, subject only to condition of sugar as being free running at that point as warranted by seller.

Appeal from District Court, Dallas County; T. A. Work, Judge.

Suit by John Barkley & Co., Limited, against the Adkins-Polk Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Geo. Sergeant and W. H. Adkins, both of Dallas, for appellant.

Gresham, Willis & Freeman and Winfrey & Lane, all of Dallas, for appellee.

WALTHALL, J. After a review of some of the issues discussed in the motion for rehearing we have concluded to withdraw the opinion heretofore filed reversing and remanding this case, and in place thereof substitute the following opinion:

John Barkley & Co., Limited, a Louisiana corporation, brought this suit against Adkins-Polk Company, a Texas corporation, to recover damages in the sum of $2,868.64, with interest thereon from the 10th day of April, 1921.

As its cause of action plaintiff alleged, substantially, the following: About the 28th of March, 1921, plaintiff contracted to sell to defendant 500 barrels of San Francisco clarified sugar at 7¼ cents per pound net f. o. b. cars shipping point, New Orleans rate, the shipment to be made thereafter; that on the 29th of March, 1921, plaintiff received due confirmation of said contract from the D. E. Crosland Brokerage Company of Dallas, Tex., defendant's agent; that said contract required plaintiff to send defendant a four-pound sample of said sugar and that plaintiff sent said sample, which was received by defendant and accepted by it as satisfactory; that pursuant to said contract plaintiff delivered to defendant, f. o. b. cars plantation at New Orleans, La., 500 barrels of sugar of the grade and quality required by the sample furnished by loading same on the cars as indicated in the petition, four in number, and delivering same to defendant's agent, the railroad company stated, for transportation to the destination specified by defendant; that in making said delivery plaintiff took out bills of lading on the several cars to shipper's order, "Notify Adkins-Polk Company, Dallas, Tex.," that being the customary form of bills of lading under such contracts; that plaintiff drew four sight drafts upon defendant, each draft being for the purchase price of the amount of sugar in each car, and attached each draft to the bill of lading which it covered and forwarded all of said drafts and bills of lading to defendant, but that defendant refused to honor said drafts and to make any payment for said sugar and attempted to repudiate such sale in its entirety, and has refused to carry out its obligations under said contract and has denied its liability thereunder; that said sugar was on the 18th and 19th days of April, 1921, placed by the railroads at the destinations specified by defendant for delivery to it; that it became manifest that defendant had no intention of making any disposition of said sugar, and to save demurrage and to assert its vendor's lien retained in the bills of lading and to resell said sugar on defendant's account, plaintiff resold said sugar at the best and reasonable market value obtainable; that in making the resale it was necessary for plaintiff to employ a broker and pay his commission of $100, pay demurrage on said cars, stating same to be $120.51. Plaintiff states the contract price of said sugar with defendant to be $14,000.69, and the resale price of said sugar to be $11,352.56, and stated its damages for which it sues at $2,868.64, and interest from and after April 10, 1921.

Defendant answering by general demurrer, general denial, alleges that D. E. Crosland, a broker representing plaintiff, exhibited a small sample of free running sugar and proposed to sell defendant an order of such sugar; that defendant was a wholesale grocer selling to the retail merchants for resale by them to consumers, and as such required free running sugar; that such was known to said broker and to plaintiff, and that defendant so advised said broker of such purpose for which the sugar was required, and advised the broker that it would take 500 barrels of such sugar, if it was free running and of the same grade, kind, character, quality, nature, and condition as that shown by the sample, and if plaintiff would ship defendant a four or five pound sample of the sugar from the bin in which the sugar was stored for inspection and approved by defendant before purchase, and if the inspection of the sugar on the tracks at Dallas, Tex., where same was to be delivered, showed the sugar free running and of same grade, kind, character, quality, nature, and condition as that shown by the sample; pursuant to said conversation said broker requested plaintiff to send such sample, and plaintiff did send a four-pound sample of the sugar with which plaintiff proposed to fill the order, and after examination defendant, finding the sample free running and of the same kind,

grade, character, quality, nature, and condition as the sample exhibited by the broker, told the broker he would buy 500 barrels, provided the sugar shipped, after inspection, should correspond in the particular stated to the samples shown and was free running, and provided one car was delivered to defendant at Greenville, Tex., and the other cars were delivered to defendant at Dallas, Tex.; that said broker then notified plaintiff to ship said sugar, which plaintiff did, about April 11, 1921, from Dolsen Switch, La., to plaintiff's order, with instructions to notify defendant; that defendant was notified of the arrival of the sugar at Greenville and Dallas and ready for delivery; that thereupon defendant inspected said sugar at Dallas, Tex., and found that it was of a different and inferior grade from that shown in the samples, and was not free running, but hard, unmerchantable, and wholly unfit for sale for the purpose for which defendant had purchased it, and unfit for retail use; thereupon defendant declined and refused to accept the sugar and demanded delivery free running sugar as shown by the samples, but which plaintiff has refused to do. Defendant denies that plaintiff resold the sugar for a reasonable market value and best obtainable price, and denies its liability for demurrage, and prays that plaintiff take nothing.

The case was submitted to a jury on one special issue, as follows:

"Was the sugar that was delivered on board the cars at Dolsen Switch, La., in conformity with the two samples submitted to the defendant? Answer this question yes or no."

The jury answered, "Yes."

Defendant's motion for a new trial was overruled, and defendant prosecutes this appeal.

### Opinion.

[1] Appellant presents eight propositions.

First. A broker is the agent of the seller.

Second. Where a buyer and broker agree on a purchase and the broker later sends to the seller a wire and letter not signed nor seen by the purchaser, with contents unknown to him, and omitting features specified by the purchaser, and inserting a condition not discussed with the purchaser, the contract in the case which binds the purchaser is the verbal one entered into between the buyer and the broker, and not the writing which passed between the broker and the seller.

Third. Where neither party requested confirmation, and where it is not required by trade rules and customs; and the contract, whether written or verbal, is complete without it, then the confirmation is not part of the contract.

Fourth. A witness must have actual knowledge of the facts about which he testifies to render his testimony admissible.

Fifth. Where goods are shipped on a shipper's order, bill of lading, billed from shipper at point of origin, and consigned to shipper at destination, with instructions to notify purchaser there, delivery takes place at destination.

Sixth. On a sale by sample the goods tendered at place of delivery must be in accord with the sample submitted.

Seventh. Where the undisputed testimony shows that goods tendered at place of delivery were not in accordance with the sample upon which they were sold, the court should instruct a verdict for the defendant.

Eighth. A jury finding without evidence to support it must be set aside, as well as the judgment based thereon.

A brief statement of the uncontroverted evidence will serve to show the application of some of the propositions.

D. E. Crosland, representing D. E. Crosland Brokerage Company, was a mercantile sugar broker in Dallas, Tex. Adkins-Polk Company, at the time of this transaction, had been buying sugar through Crosland for several years. About March 28, 1921, Crosland exhibited a small sample of John Barkley & Co.'s sugar to Adkins, of Adkins-Polk Company, which Adkins examined, expressing to Crosland a willingness to buy, if a four-pound sample was sent out of the stock, from which it was proposed to fill the order. Crosland thereupon corresponded by wire with Barkley & Co., indicating price offered and requested sending the larger sample. The sample was sent. Adkins then told Crosland he would take 500 barrels of sugar, if it was free running sugar of the same grade and quality as in the two samples. The wire sent did not contain the requirement that the sugar be free running. Barkley replied by wire to Crosland confirming Adkins' shipment. Crosland replied by letter to Barkley's wire, confirming sale to Adkins, "f. o. b. shipping point, New Orleans rate, shipment April 10th."

Appellee offered in evidence the above correspondence. The telegrams were objected to by appellant on the grounds that it was communication between a principal and his agent, not authorized, discussed, or known to appellant, and did not constitute the contract in the case. The letter was objected to for the reason that it should be a confirmation of a contract already entered into and not a part of the contract itself. The objections were overruled and the evidence heard.

[2, 3] In the court's ruling on the admissibility of the evidence, we think there was no reversible error on the grounds stated. The facts show that Crosland was no more than a middleman between the seller and the buyer of the sugar for a commission from the seller. He had no custody of the property, nor interest in it, and did no more than exhibit to the buyer the small sample of sugar for the seller, solicit its purchase, and submitted to each the respective propositions of both seller

and buyer, which resulted in consummating the deal, the buyer and seller each transmitting through the broker its propositions, and for that purpose and to that extent the broker would be the special agent of each. The evidence does not, we think, show that the broker sustained any fiduciary relation to the seller. It shows that the broker sold sugar in the open market between those who had sugar to sell and those who buy. At the solicitation of the broker plaintiff sent him the small sample of sugar which he primarily exhibited to the appellant. Appellant requested a larger sample, and submitted to the broker the proposition to buy, and the price it would pay, the kind and character of sugar it would buy, provided that the sugar was true to the samples which the broker submitted to appellee. The broker apparently favored neither one. He apparently did no more than to bring the parties together by transmitting their propositions from the one to the other for the purpose of effecting the sale. Apparently the broker had no terms of his own to offer as to the kind or quality of the sugar, the price or terms to be paid, or time or place of delivery. The broker was to be paid his commission by the seller. His agency apparently was limited to the one transaction. Many courts of high standing hold that, in so far as the broker acts strictly as a middleman to bring the parties together, such as to effect a sale or purchase, he is the common agent of both. 9 C. J. p. 518, par. 20, and notes.

From the above it necessarily follows that Crosland, the broker, having no propositions of his own, and none from the seller to offer to the buyer, as to price, kind, quality, quantity, time, or place of delivery, but strictly a go-between, a middleman, he had no power to make a proposition of sale, and made none. The evidence does not show that Crosland undertook to make a sale or agree on a sale on his own account or on account of appellee.

[4] There is no merit in the third proposition. Crosland wired Barkley & Co. buyer's offer of price for sugar, quantity, time of shipment, his brokerage charge, and request to quickly send buyer four-pound sample. Barkley & Co. wired Crosland:

"Telegram received confirm Adkins five hundred barrels seven one-quarter net shipment April tenth your brokerage twenty cents sending sample."

Seller's wire confirmed the Crosland wire in all points. The buyer's offer had not been closed, and the Barkley & Co. wire was only an acceptance or assent to the sale on the terms proposed.

Crosland then wrote Barkley & Co.:

"We have your wire confirming sale to Adkins-Polk Company, Dallas, of 500 barrels San Francisco clarified sugar at 7¼ cents net f. o. b. shipping point, New Orleans rate, ship-ment April 10th," and other statements not material.

[5, 6] The fourth proposition submits error in admitting evidence of Joseph M. Ory. Witness, testifying by deposition, said he was engaged in the sugar business as bookkeeper for the San Francisco Planting Company, and had been so engaged for 12 years; he sent the sample of sugar taken from the stock forming the 500-barrel shipment; personally attended the shipment and loading of the sugar sent Adkins-Polk Company, and stated in detail how the shipment was made; the sugar was packed in the barrels during the month of December, 1920; said:

"This sugar was free running at that time. It at that time conformed to the sample about which I have already testified, but I do not know whether, when said sugar was loaded into the cars, it was at that time free running and conformed to said sample. I did not open the barrels at the time of shipment."

Testified as to his familiarity with the San Francisco grade of sugar, its general qualities and characteristics, and clarified sugar in particular. Witness, testifying again by later deposition, said:

"About three weeks before shipment was finally made I mailed John Barkley & Co., Limited, sample taken from this stock which was mailed to them as per their request. I do not know if all the stock of sugar from which I took the sample was free running at the time I took the sample, but in the several barrels from which I took the sample, the sugar was not hard, which would indicate that it was free running sugar at the time sample was taken."

In the deposition witness was asked:

"Did it at that time conform to the sample with regard to which you have just testified? If not please specify."

Witness answered, "Yes."

Appellant objected to the question for the following reasons: That the witness did not have actual knowledge of the facts about which he was testifying, either as to the sample or the sugar shipped; it was a mere conclusion of opinion of the witness; it was an issue the jury would be called upon to answer. We think the testimony was admissible. The sale was by sample. The sugar was free running about three weeks before the shipment was finally made. The witness extracted the larger sample from several barrels of the sugar sent and therefrom had more or less knowledge at that time of the sugar in the several barrels from which the samples were taken. We think it was then a question of the weight to be given to the testimony.

[7] Appellant insists that the place of delivery was Dallas and not Dolsen Switch. The rule is well established that, if the goods are to be shipped to the purchaser, in the absence of an agreement to the contrary, de-

livery to the carrier is delivery to the purchaser. Robert McLane Co. v. Swernemann et al. (Tex. Civ. App.) 189 S. W. 282, citing Rea v. Schow, 42 Tex. Civ. App. 600, 93 S. W. 706; Greif v. Seligman (Tex. Civ. App.) 82 S. W. 534.

[8, 9] It becomes a most important inquiry in determining the place of delivery what was the agreement of the parties with respect to the place of delivery. We understand the rule to be that when a sale is made by sample the sample becomes the standard of comparison for the eye as to quality and kind, instead of the ear, and memory in description, in determining whether the goods sold come up to the description of the goods sent. The bulk of the goods, to complete the sale, must correspond with the sample; if not, the buyer may reject when delivery is tendered.

[10] A warranty is implied in sales by sample; that the goods shall be of like quality, character of the sample, a condition precedent to a completed sale. Now, the jury found that the goods delivered on the cars at Dolsen Switch, La., conformed to the samples.

In submitting the above issue, the only issue submitted, the court assumed as a matter of law that Dolsen Switch was the place of delivery, the place where the comparison of the sugar sent with the sample should be made. Delivery f. o. b. cars in pursuance of the consignees' buyer's order, in the absence of any agreement to the contrary, completes the contract of sale, at that time and place. Gulf, W. T. & P. Ry. v. Browne, 27 Tex. Civ. App. 437, 66 S. W. 341; Robinson & Martin v. Railway Co., 105 Tex. 185, 146 S. W. 537.

[11] The question of delivery is determined by the facts, and when the facts as to delivery are undisputed, as here, delivery becomes a question of law. Appellant, by the terms of his telegram to appellee, contracted to buy the sugar f. o. b. cars at the shipping point.

[12] The courts in other jurisdictions are not altogether harmonious in their holdings as to where the inspection or comparison of the goods delivered with the samples is to be made, in the absence of an agreement, whether at the time and place from which the shipment is made or at the time and place of their arrival at their destination. A discussion of the question is found in Eaton v. Blackburn et al., 52 Or. 300, 96 P. 870, 97 P. 539, 20 L. R. A. (N. S.) 53, 132 Am. St. Rep. 705, 16 Ann. Cas. 1198, by Chief Justice Bean of the Supreme Court of Oregon; also in Strauss v. National Parlor Furniture Co., 76 Miss. 343, 24 So. 703, by Mr. Justice Whitfield of the Supreme Court of Mississippi, and in some other states we have examined, in which it is held, in substance, that where goods of a specific quantity and quality are sold to a buyer in a distant state, and where there was no agreement or understanding that the delivery of the goods to the carrier at the point of shipment should be taken as an acceptance by the buyer, the buyer, under an executory contract, had a reasonable time after receipt of the goods to reject them when they did not conform to the goods bought. Many cases are there referred to.

[13, 14] But, however that may be, we have concluded that a rule has been announced in this state in McLane Co. v. Swernemann & Schkade et al. (Tex. Civ. App.) 189 S. W. 282, by the Austin court, in which it is held that "if the goods are to be shipped to the purchaser, in the absence of an agreement to the contrary, delivery to a common carrier is delivery to the purchaser," and that the quality of the goods is to be determined at the place of sale, that is, at the point of shipment. Inspection may be made at the place to which the goods are shipped, but its effect would be only to determine the condition of the goods at the point of shipment. Here there was no agreement as to the time when or the place where an inspection or comparison of the shipment with the samples was to be made, and the trial court was not in error in submitting the issue to the jury as the sale was complete when delivered to the carrier at Dolsen Switch, subject only to the condition of the sugar as being free running at that point.

We find no reversible error, and the case is affirmed.

HIGGINS, J., did not sit in this case.