### GOODE et al. v. RAMEY et al.
### No. 2648.

Court of Civil Appeals of Texas. El Paso.
April 7, 1932.

On Motion for Rehearing and Rehearing Denied April 14, 1932.

J: A. Gillett and Harrison, Scott & Rasberry, all of El Paso, for appellants.

Lea, McGrady & Edwards, of El Paso, for appellees.

WALTHALL, J.

R. A. Ramey brought this action against Walter Goode and Grace A. Goode and the American Mortgage Company to recover upon a building contract for the erection of an apartment house in the city of El Paso the sum of $3,207, and the further sum of $542.82 against Walter Goode and Grace Goode. He alleged that the $3,207 was the balance due him on the building contract for the erection of the apartment house, and that $542.82 was for extras furnished by him.

Foxworth-Galbraith Lumber Company, a corporation, intervened in the suit, alleging that it was the assignee of Ramey, and was entitled to recover whatever balance might be due Ramey.

The American Mortgage Company answered that it was only the custodian of the fund out of which was being paid for the erection of the apartment house, and asked to be discharged with its costs and its attorney fee for filing its answer.

Walter Goode and Grace Goode answered, denying any indebtedness to Ramey, and by cross-action alleged that he was indebted to them in the sum stated because of defects accruing in the construction of the apartment house and for failure to construct same in accordance with the plans and specifications agreed upon, and further alleged that the American Mortgage Company, as custodian of the building fund, had paid out various sums of money contrary to the provisions of the building contract, and asked that they have judgment against the American Mortgage Company for any such sums found to be due; they further alleged that J. C. Galbraith and M. O. Myre were sureties for Ramey in the construction of said apartment house, and pray for judgment over against them in the event Ramey recovers against them.

Galbraith and Myre answered and adopt the pleadings of Ramey and intervener, Foxworth-Galbraith Lumber Company, and deny all allegations of defendants Goode.

Upon special issues submitted the jury found substantially as follows:

Question No. 1: Plaintiff erected the building and installed the fixtures called for in the plans and specifications agreed upon by the parties in a substantial compliance with such plans and specifications.

Question No. 2: "What sum, if paid now, do you find from the evidence would reasonably compensate defendants for the failure of. the building in question and the fixtures therein, to conform to the plans and specifications agreed upon by the parties, in the erection of the building, if it did fail to conform thereto?" The jury answered $893.75.

Question No. 3: Defendants ordered plaintiff, in connection with the erection of the buildings, to install fixtures or perform work not called for in the plans and specifications agreed upon by the parties.

Questions Nos. 4 and 5: The jury found and specified the items of work and additional fixtures ordered by defendants to be performed and furnished by Ramey not called for in the plans and specifications, and stated the value of each item, the aggregate value being $441.30.

Question No. 6: Plaintiff Ramey was prevented by the acts of the defendants Goode from completing the building in exact conformity to the plans and specifications agreed upon by the parties, if the building was not so completed.

Judgment was rendered as follows: In favor of Foxworth-Galbraith Lumber Company against the American Mortgage Company in the sum of $1,760.45; in favor of Walter Goode against the American Mortgage Company, for $452.45; that Ramey, in his right, recover nothing against defendants Goode, and that defendants Goode recover nothing on their cross-action against cross-defendants Galbraith and Myre, and that they take nothing by their cross-action against Ramey; all costs incurred by the American Mortgage Company were taxed against it, and all other costs were taxed against defendants Goode. Defendants Goode excepted to the judgment, and, their motions for new trial having been overruled, they excepted, gave notice, and prosecute this appeal.

## Opinion.

1. The original contract, plans, and specifications provided for the erection of a ten-apartment building. After the contract had been drawn, it became necessary to eliminate two of the apartments appearing on the plans to meet the building code of El Paso. On the trial Ramey offered the original plans (blue prints) in connection with his testimony, and the supplemental contract marked with a cross in red in the plans to show the structure he was to build and to show what two apartments had been eliminated.

It was not reversible error to admit the plans over objection that the plans were not material to any issue in the case. Capitol Hotel v. Rittenberry (Tex. Civ. App.) 41 S.W. (2d) 697, par. 32; Armendaiz v. Stillman, 67 Tex. 458, 3 S. W. 678; Hanrick v. Dodd, 62 Tex. 75.

2. Goode's bill of exception states that Ramey offered in evidence an assignment from Ramey Bros. by R. A. Ramey of their interest in this cause of action, to Foxworth-Galbraith Lumber Company, intervener, to which the Goodes objected for several reasons, the signature to the assignment had not been proven, no proof that Ramey Brothers was a legal entity and authorized to transfer the interests to R. A. Ramey, the assignment had not been signed or acknowledged as required in matters of real estate, the assignment was made prior to the commencement of the building involved in this case, and without notice to them of the assignment of Ramsey's responsibility under the contract, and the substitution of a different party to whom they would be required to look in case the building contract might not be carried out according to its terms. The objections were overruled.

The proposition complaining of the admission in evidence of the assignment is to the effect that the assignment transferred all money, funds, and payments to be made in the erection of the building, including the notes and liens on the real estate, was not executed as provided by the law in reference to such transactions.

While the bill of exceptions shows that the assignment was introduced by Ramey, the purpose and effect of it was to show the interest of intervener, Foxworth-Galbraith Lumber Company, in the matters assigned and upon which intervener relied for its cause of action. We need not state intervenor's pleading to show its interest in such funds, and will state only that it had adopted Ramey's pleadings, and as to such funds its cause of action was similar to that of Ramey. The assignment seems to have been sufficiently proved up by Ramey. We do not see how the Goodes could have been harmed

in any way by the introduction in evidence of the assignment. If error, it was as to Ramey.

3. Ramey was permitted to testify over objection that, "Wiegel Plumbing Company was my plumbing contractor. I have known them for about eight or nine years. They have been doing a general plumbing business in El Paso during that time. Their work was put in according to specifications."

In answer to the question by Ramey, "What kind of job did they do with reference to workmanship and material?" to which witness replied: "Why, it was put in according to specification of material and workmanship," the objection was that the answer called for a conclusion of the witness as to workmanship and material, a question to be determined by the jury.

The specifications to which the questions and answers were directed necessarily covered a large amount of detail. Under the item, "Plumbing," the contractor was required to follow the plans made a part of the specifications, furnish all materials and execute all work in accordance with same, and, in accordance with the city plumbing ordinance, using the kind and quality of material as set forth in the contract specifications, and as per the drawings and specifications, including such subsections as sewer connections, hot water supply, heating, kitchen stoves, refrigerator, joints, and clean-outs, vent pipes, testing, gas and piping, fixtures, bathroom accessories, shades, and incinerators, and under each subsection many details. After qualifying as a contractor of experience in building contracts, witness stated that from his experience he had knowledge as to how buildings should correctly be put up, and was capable of taking plans and specifications and knowing what they call for; stated in much detail the class of workmen he employed, naming the subcontractors, and the material used in the building. While the witness did not state that he had personally inspected the material used, and the manner in which it was put in, the inference seems to be that he had sufficient personal knowledge of it to answer the question objected to.

We are not prepared to say under the record, as presented here, that it was error to admit the statement of the witness. The issue sought to be proved was not a mixed question of law and fact, but purely a fact question. We think the issue was one upon which a witness in possession of all the facts may properly state his opinion or conclusion to which such facts would fairly lead, notwithstanding the witness' answer may embrace the very issue to be submitted to the jury. The conclusion of the witness is then testified to like any other fact to be considered by the jury for what they may believe it to be worth. Scalf v. Collin County, 80

Tex. 514, 16 S. W. 314; Adkins-Polk Co. v. John Barkley & Co. (Tex. Civ. App.) 297 S. W. 757; International & G. N. R. Co. v. Mills, 34 Tex. Civ. App. 127, 78 S. W. 11.

■ 4. The Goodes objected to certain estimates for materials which carried the signature of Walter Goode only, of the two Goodes. The building contract provided that all checks drawn upon said account shall be signed by Ramey and countersigned by Walter Goode and Grace Goode, and approved by an officer of the American Mortgage Company. A portion of the property upon which the apartment house had been erected was the homestead of the Goodes. It is submitted that without the signature of Grace Goode she would not be bound by the estimates, and as to her their admission was error.

Ramey was asserting no lien on the building. As a consideration for the erection of the building, Ramey had received from the Goodes a series of notes which the American Mortgage Company had agreed to buy and did buy, and it was out of the cash it advanced for the notes the estimates for materials were paid. So far as Ramey was concerned, it was not error to admit the estimates. The contract did not provide that the estimates or bills for the material should be signed by Grace Goode.

■ 5. Over objection of the Goodes, the trial court admitted in evidence a letter of the American Mortgage Company to Ramey with reference to how the money should be disbursed. A carbon copy of the letter had been sent to the Goodes as to the manner of the disbursement of the money; they made no objection, but apparently acquiesced. The Goodes did not ask that the letter be limited to Ramey. It seems apparent that, when the building had been completed in substantial compliance with the plans and specifications, as found by the jury, the money was Ramey's. We think reversible error is not shown.

■ 6. Ramey asked the witness Gaines: "Did you sell Mr. Ramey an incinerator with capacity to take care of the Goode Apartments?" The witness answered, "Yes, sir." The Goodes objected, for the reason that the question called for the opinion of the witness on an issue within the province of the jury to determine, and the evidence not having shown that the witness was qualified as an expert. The record does not show that Gaines was testifying as an expert, but as the manufacturer's salesman of the incinerator in question who testified he handled that make of incinerator, and that it was equal to any incinerator of any rated capacity. He said, "I sold Mr. Goode one rated for a capacity to take care of the Goode apartments."

The witness, being a salesman of the manufacturer of the goods sold, would seem to be competent, without additional qualification, to testify to its sufficiency for the purpose for which it was sold. It would seem to be a fact the witness personally knew. The witness' competency is primarily for the trial court, and will be reviewed only in case of abuse of discretion. As we said in El Paso Electric Company v. Whitenack (Tex. Civ. App.) 297 S. W. 258, 260: "It is difficult to determine just where the rule applies and find the dividing line between a statement of a fact and an opinion of fact, and a good margin must and should be left to the sound discretion of the trial court." Witness' knowledge of the capacity of the incinerator is hardly an opinion; it was a fact known from information. Such matters go to the weight of the evidence and the credibility of witness, and not to the competency of the testimony. Missouri Pacific Ry. Co. v. Fagan, 72 Tex. 130, 9 S. W. 749, 2 L. R. A. 75, 13 Am. St. Rep. 776.

■ ■ 7. After the case had been submitted to the jury and they deliberated thereon for about a day and a half, the jury came into open court and informed the judge that they were unable to agree on questions 6 and 7 which had been submitted as special issues. Some dialogue between the foreman and the judge occurred as to how they were divided, how long they had been divided; the judge asking whether there was anything in the questions the jury did not understand, some understood one way and others another. The court retired the jury for further deliberation, and they made no further request of the court. Later the court, on his own motion, recalled the jury and submitted to them question 6 in a different or amended form. The Goodes objected to the action of the court in changing the form of the question, and in withdrawing entirely from the jury question 7, for the reason that the jury had not requested additional instructions and had not indicated a misunderstanding of either question.

Counsel refers us to amended article 2190 of our Revised Civil Statutes (amended by Acts 1931, c. 78, § 1 [Vernon's Ann. Civ. St. art. 2190]). The article referred to is not in point. We have found nothing on our statutes that inhibits the trial court on his own motion to correct or modify a charge which has been given to the jury. Indeed, as said in R. C. L. vol. 14, p. 812, the consequences would be highly mischievous if such right did not exist. It is there said that a court may correct the error in any instruction by withdrawing, altering, or explaining it, and in the notes refers to many cases. We have found no case in this state holding differently.

■ 8. Goodes' motion asked for a new trial on the ground of contradictory findings in the jury's verdict on issues one and two. On issue 1 the jury found that Ramey erected the building and installed the fixtures sub-

stantially as called for in the plans and specifications, and on issue 2 found that the sum of $893.75, if paid now, would reasonably compensate the Goodes for the failure of the building and the fixtures to conform to the plans and specifications in the erection of the building.

Ramey submits that the findings are not irreconcilable, and that the difference in the findings would be on the difference between a substantial compliance and a literal or strict compliance with the plans and specifications. Ramey's suggestion may be strengthened by the statement of some of the witnesses to the effect that some small details of the work needed some additional work and estimated the expense of doing so at about $300; also by the sixth finding of the jury where it is said that Ramey was prevented by the acts of the Goodes from completing the building, "in exact conformity" to the plans and specifications.

We are considering here only the question of irreconcilable conflict in the two findings of the jury, and we are inclined to hold that the trial court and the jury must have adopted the theory that the $893.75 was the amount necessary to an "exact conformity" with the contract as distinguished from a substantial compliance. We think the case of Graves v. Allert & Fuess, 104 Tex. 614, 142 S. W. 869, 39 L. R. A. (N. S.) 591, is in point.

■■ ■■ 9. In submitting the issue as to what constitutes a substantial compliance with the plans and specifications agreed upon by the parties, the court in his charge said: "To constitute substantial performance the contractor must have in good faith intended to comply with the contract and must have substantially done so in the sense that the defects are not pervasive and do not constitute a departure from the general plans contemplated for the work, and are not so essential that the object of the parties in making the contract, and its purposes, cannot without difficulty be accomplished by remedying them."

The charge did not direct that the building code of the city of El Paso must be complied with in order to be a substantial compliance with the plans and specifications. The Goodes submit that, to be a substantial performance of the contract, a building not constructed in accordance with the city's building code, though it does with the contract, would not conform to the definition of "substantial performance" given by the court.

The point is, it seems that the city building code requires a deeper and broader foundation for the building in question than the contract made by the parties, and the contention is the contractor, in the foundation, must conform to the building code rather than to the plans and specifications stated in the contract.

We are referred to the cases of Wiggins v. Bisso, 92 Tex. 219, 47 S. W. 639, 71 Am. St. Rep. 837; Reed v. Brewer, 90 Tex. 149, 37 S. W. 418.

The two cases discuss questions arising under void contracts made so because in violation of public policy, and in such cases recovery could not be had by either party. We think the contract here is not a void contract. It is not submitted that the contractor by the terms of the contract was to secure a building permit to conform to the city's building code. Such a provision is not read into the contract as suggested by the Goodes, but, in the absence from the contract of such provision, such duty is imposed upon the owner. 9 C. J. p. 730, par. 98 and notes. Much evidence is found in the record, to the effect that experienced contractors, at the suggestion of both parties, examined the building after its erection in minute detail in the presence of one of the Goodes, who was asked to point out anything not satisfactory, and some of the evidence is to the effect that the building was in conformity to the plans and specifications, with the exception of some minor details, and amply covered by the amount awarded in the jury's second finding, and discussed above under another proposition. Some of the evidence is to the effect that the city inspector checked over and approved the plans and specifications before the building was erected. The evidence is sufficient to require the submission and to sustain the jury's first finding.

11 and 12. Discussed in connection with another point.

■■ 13. The oft-repeated and troublesome question of misconduct of the jury in the jury room is presented. Some contractors, and some owners of buildings who had had some trouble with contractors in building, were on the jury. They necessarily were not harmonious, but we cannot say from the record that the members of the jury did more than to exercise their own best judgment in passing upon the issues presented. Much of the evidence under the building contract and plans and specifications was more or less technical to jurors who were not contractors, and as to such the contractor's understanding of what was meant seemed to control. Jurors whose duty it is to pass upon credibility of the witnesses and the weight to be given to their testimony must necessarily take into consideration those matters of common knowledge and experience with which they are possessed, such as their occupational information and personal experience as contractors and builders, and, as Judge Speer said, such is a part of the human machinery for the ultimate finding.

Foxworth-Galbraith Lumber Company presents a cross-assignment of error against the American Mortgage Company. The court rendered judgment in its favor for $1,760.45 against the American Mortgage Company, and it is submitted that the judgment should have been for $441.30 additional, that amount being the items of work and additional fixtures ordered by the Goodes to be performed and furnished by Ramey and not included in the plans and specifications, as found under question No. 4. We think the amount should have been allowed.

With the exception stated, no other change is made in the judgment. On the whole case, we sustain the disposition made of it by the trial court, except as stated, as modified.

The case is affirmed.

#### On Motion for Rehearing

Appellees and defendants in error call our attention to an error in our opinion which we now here correct.

The judgment of the trial court is so reformed and here rendered as to award to appellee Foxworth-Galbraith Lumber Company.judgment against American Mortgage Company for $2,212.90, with interest thereon from July 1, 1931, and judgment in favor of Foxworth-Galbraith Lumber Company against Walter Goode in the sum of $441.30, with interest thereon from July 1, 1931, and further that the Goodes be adjudged to recover nothing against the American Mortgage Company, and, as so reformed, the judgment of the trial court be affirmed; it is further ordered that to conform hereto judgment be entered against appellants and plaintiffs in error and their sureties on their respective bonds.